No. 103,361

STATE OF KANSAS, *Appellee*, v. KARL BEAMAN, *Appellant*.

(286 P.3d 876)

Opinion filed October 19, 2012.

*Heather R. Cessna*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Sheryl L. Lidtke*, deputy district attorney, argued the cause, and *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

BILES, J.: Karl Beaman directly appeals his convictions for rape under K.S.A. 21-3502(a)(2) and aggravated indecent liberties with

a child under K.S.A. 21-3504(a)(1). He argues the district court erred by: (1) allowing him to improperly waive his right to a jury trial; (2) refusing to grant defense counsel a continuance to research Jessica's Law sentencing issues; (3) denying his departure motion; (4) sentencing him to a life sentence with no parole for 25 years when another statute permits parole after 20 years; (5) imposing lifetime postrelease supervision; (6) imposing electronic monitoring; and (7) sentencing him to the aggravated sentence without having the aggravating factors submitted to a jury. We affirm Beaman's convictions. We vacate that portion of his sentence imposing postrelease supervision for the rape conviction. We also remand to the district court for a nunc pro tunc order to correct a portion of the journal entry to delete reference to electronic monitoring, but we affirm the remainder of his sentence.

## Factual and Procedural Background

Beaman was charged in a two-count complaint with rape and aggravated indecent liberties with a child. He admitted the criminal conduct but disputed the date of the rape because he claimed it occurred after the victim had turned 14. On the morning of jury trial, Beaman informed the court that against the advice of his attorney, he wanted to waive his right to a jury trial and proceed with a bench trial instead. The record reflects the following exchange:

"THE COURT: Mr. Beaman, your attorney has advised the Court that it is your desire to waive a jury for this trial; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: He's explained to you and he's indicated to me that that's against his advice, is that right?

"THE DEFENDANT: That is correct, sir.

"THE COURT: He's indicated you and I'm sure that the defendant is almost always better off taking a case in front of a jury, is that right?

"THE DEFENDANT: Yes, he has said that. That is correct.

"THE COURT: And the reason for that is a lot of us [judges] are old guys who have been around a long time and we've seen a lot of things. And after you hear a lot of cases, you get to be kind of maybe even a little bit prosecution oriented.

"THE DEFENDANT: Well, he didn't explain that to me, but I do understand that. I do understand that.

> "THE COURT: And that he was adamant, I'm sure, that you would be better off taking this case to a jury?
>
> "THE DEFENDANT: He did say that also, sir.
>
> "THE COURT: All right. Can you tell me why you're likely or why you're inclined to ignore that advice?"

Beaman's reply was lengthy and reflective about what his experiences had been since his arrest and included that he understood he was responsible for his actions even if he believed at the time that the victim consented to the sexual act. Beaman told the court that because he admitted everything, there was no sense in taking the victim or her family through a jury trial. He also told the court, "You've been on the bench long enough to be able to make the decision, so, you know, I put it in your hands because I'm not trying to hide from what I did." The court soon replied:

> "THE COURT: It sounds to me that you understand what you're doing, and that you're doing that because you don't want to go through the jury process, don't want to put the victim through the jury process.
>
> "THE DEFENDANT: Or the family or anything.
>
> "THE COURT: You understand they're still going to have to testify, they'll just be testifying to me rather than a jury?
>
> "THE DEFENDANT: Uh-huh."

The State agreed to waive the jury trial, and the court accepted Beaman's waiver. After a bench trial, the district court convicted Beaman of rape and aggravated indecent liberties with a child.

Beaman filed a motion for new trial as to the rape count only, claiming the State failed to prove beyond a reasonable doubt that the victim was under the age of 14 at the time the crime occurred. A few weeks later, Beaman filed a departure motion, asking the district court to grant him a dispositional or downward departure on sentencing because, among other reasons, he waived his right to a jury trial to "avoid trauma and embarrassment to the victim."

That same day, Beaman filed a motion to continue sentencing, claiming the State would need more time to respond to his departure motion and that his defense counsel wished to do additional research on departure and sentencing issues. The continuance motion did not specify what the additional research entailed, nor did it explain why counsel was unable to complete the research or

determine whether the additional motion had merit during the time since Beaman's conviction.

The court denied the motion for new trial, stating it had found beyond a reasonable doubt that the rape occurred when the victim was still 13. It also denied the motions for continuance and departure. Beaman was sentenced to life with a mandatory minimum of 25 years in prison and lifetime postrelease supervision for the rape conviction. Beaman was also sentenced to a concurrent 61 months in prison for the aggravated indecent liberties conviction and lifetime postrelease supervision. The sentencing journal entry indicates Beaman was sentenced to lifetime electronic monitoring and lifetime registration.

Beaman filed a timely notice of appeal. Our jurisdiction is proper under K.S.A. 22-3601(b)(1) (off-grid crime; life sentence).

## Jury Trial Waiver

Beaman argues he did not knowingly and voluntarily waive his jury trial right because the district court failed to fully inform him of what that right entailed. Before considering the merits of Beaman's jury waiver claim, there is a threshold question concerning issue preservation.

### Issue Preservation

Beaman concedes he did not challenge the jury trial waiver in district court and acknowledges that generally issues not raised below are not preserved for appeal. But he claims an exception applies because consideration of his argument and the potential error is necessary to prevent the denial of his fundamental right to a jury trial. See *State v. Anderson,* 294 Kan. 450, 464-65, 276 P.3d 200 (2012) (reciting the general rule and the three recognized exceptions including when consideration is necessary to serve the ends of justice and prevent denial of fundamental rights).

The State claims there is an inconsistency among Kansas appellate courts concerning whether this issue may be raised for the first time on appeal. The State argues this court may have established a bright-line rule that a jury trial waiver issue cannot be raised for the first time on appeal in *State v. Luna,* 271 Kan. 573, 577, 24

P.3d 125 (2001). In contrast, the State notes the Court of Appeals subsequently reviewed a waiver issue after concluding it involved a fundamental right in *State v. Bowers*, 42 Kan. App. 2d 739, 216 P.3d 715 (2009). *Bowers* did not cite or otherwise acknowledge *Luna*.

This court recently addressed whether our *Luna* decision created a bright-line rule regarding preservation of jury waiver issues in *State v. Frye*, 294 Kan. 364, 370, 277 P.3d 1091 (2012). In *Frye*, we noted that *Luna* continued to acknowledge there are exceptions to the general preservation rule, emphasizing that the preservation requirement is prudential rather than jurisdictional. We held that *Luna* was not intended to make a bright-line rule that jury trial waiver questions could never be heard on appeal. *Frye*, 294 Kan. at 370. Implementing that premise, the court noted several issues arose in *Frye* warranting review of the defendant's handwritten jury trial waiver, including the district court's failure to ascertain the waiver's validity. Based on those issues, we held the Court of Appeals did not err in finding an exception to the preservation rule in order to hear the issue on appeal. *Frye*, 294 Kan. at 371.

In keeping with *Frye*, we must determine whether Beaman should be permitted to raise the jury trial waiver issue for the first time on appeal. Beaman claims this issue merits review because the record reflects he was confused during his discussion with the district court about his waiver, which implicated the court's affirmative duty to ensure that Beaman fully understood his right to a jury trial. This claim is analogous to another preservation issue that we reviewed in *State v. Foster*, 290 Kan. 696, 233 P.3d 265 (2010).

In *Foster*, we considered for the first time on appeal an issue concerning whether the district court should have *sua sponte* reconsidered the defendant's competency to stand trial. The defendant argued on appeal that two alleged incidents of confusion at trial should have signaled that competency was again an issue. We agreed to consider the claim because it raised due process concerns and questioned the district court's compliance with a statutory obligation found in K.S.A. 22-3302(1). *Foster*, 290 Kan. at 702. Similarly, Beaman asserts the record reflects confusion during his discussion with the district court about his jury trial waiver. And while

we ultimately disagree with his arguments, we hold that it is appropriate to consider this issue even though it is raised for the first time on appeal. See *Foster*, 290 Kan. 702.

*Standard of Review*

Whether a defendant waived the right to a jury trial is a factual question, subject to analysis under a substantial competent evidence standard of review. But when the facts of the district court's determination to accept a jury trial waiver are not disputed, the question whether the defendant voluntarily and knowingly waived the jury trial right is a legal inquiry subject to unlimited appellate review. *State v. Barnes*, 293 Kan. 240, 260, 262 P.3d 297 (2011). The parties do not dispute the pertinent facts related to the jury trial waiver.

*Discussion*

A criminal defendant may waive the fundamental right to a jury trial if the court and State agree to the waiver. K.S.A. 22-3403 (defendant can submit felony case to court instead of jury with consent); *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975). But we have said these waivers should be strictly construed to ensure the defendant has every opportunity to receive a fair and impartial trial by jury. *Irving*, 216 Kan. at 589.

The test for determining the waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing. Whether that test is satisfied depends upon the particular facts and circumstances in each case. *Irving*, 216 Kan. at 589; see also *State v. Clemons*, 273 Kan. 328, 340, 45 P.3d 384 (2002) (determination of knowing and voluntary jury trial waiver must be based upon facts and circumstances in each case); *State v. Fisher*, 257 Kan. 65, 73-74, 891 P.2d 1065 (1995) (no error in waiver because defendant spoke with counsel prior to decision, was informed of constitutional right to jury trial and effect of a bench trial, and showed desire to have bench trial). A waiver will not be presumed from a silent record. *Irving*, 216 Kan. at 589.

*Irving* cites the American Bar Association's (ABA) standards for accepting a jury trial waiver, which it adhered to as the accepted procedure in Kansas. 216 Kan. at 589-90. Those standards are the

same today. See American Bar Association Standards for Criminal Justice, Trial by Jury, Section 1.2(b). Fashioned from the ABA's recommendation, the *Irving* court stated: "[F]or a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record." 216 Kan. at 590.

Beaman does not dispute that he waived his right in open court. He argues that the district court assumed he fully understood his right to a jury without actually explaining that right to him and notes the court did not explain that a 12-person jury would need to unanimously agree on guilt. But Beaman acknowledges that he admitted committing the acts alleged and gave thoughtful answers on why he wanted to waive his rights. He also indicated he had discussed his decision with his attorney prior to advising the court of his decision and understood that decision was against legal advice.

The record reflects that the district court did not articulate all the attendant particulars surrounding the right to a jury trial. But the district court fervently encouraged Beaman to proceed with the jury trial, plainly indicating which alternative was in his best interest. The district court also corrected Beaman's stated reason for wanting a bench trial by telling him that the victim and her family would still testify before the court. To the extent Beaman asserts there was some confusion about this, the district court picked up on it and corrected it. And Beaman acknowledged that he understood this, repeatedly stating that he wanted a bench trial.

To these facts, we would add that the sentencing hearing transcript from proceedings conducted 2 months later reflects Beaman's continued understanding that he knowingly waived his jury trial right as he argued for a departure sentence, in part, because of that waiver. Beaman stated to the sentencing judge, "I told you my reasons why I didn't want to have a jury court." Similarly, Beaman's attorney argued for the departure citing the jury trial waiver and the perceived benefit that waiver had on the victim and her family.

Nonetheless, there remains a distinction between this case and some others in which this court has upheld a trial waiver, because Beaman was not explicitly advised by the court that he had a "right" to a jury trial. The record reflects the dialogue began with the district court affirmatively inquiring of Beaman about his counsel's representation that Beaman wanted to waive the jury trial. And while the district court did not actually say the words "right to a jury trial" in its inquiry of Beaman, it did use the phrase "your desire to waive a jury for this trial" at the outset.

This court addressed the purpose of a district court's telling a defendant of his or her right to a jury trial in *Frye*:

"If the district court fails to properly advise a defendant of the nature and extent of his or her constitutional right to a jury trial, how does that defendant know to object to the court's failure to inform, *i.e.*, how does the defendant know what the defendant does not know? Granted, defense counsel should know, but the ability to waive the fundamental right to a trial by jury rests solely with the defendant and *Irving* informs us that the responsibility to inform a defendant of his or her jury trial right rests squarely with the presiding judge." 294 Kan. at 370-71.

In *Clemons*, we accepted a jury trial waiver, even though the district court did not use the phrase "right to a jury trial" in accepting the waiver, and held it was sufficient that defendant's counsel had talked to the defendant about this right. We held further that the determination as to whether the jury trial right was waived cannot be "made in a vacuum but must be based upon the facts and circumstances of each case." 273 Kan. at 340. This emphasizes that the determination in such cases must look beyond mere form in order to ensure a knowing and voluntary waiver.

Without question, it would have been a better practice for the district court to have expressly told Beaman on the record that he had a *right* to trial by jury before engaging in the verbal exchange that was clearly intended by the court to ensure Beaman's waiver was knowing and voluntary. And although there may be an element missing in what might amount to a preferred "checklist" for accepting a waiver in this case, the underlying purpose of that missing element, as articulated in *Frye*, is that the court satisfy itself that

defendant knows what rights he or she has and what he or she is giving up.

That purpose was fulfilled in Beaman's case by the district court's use of the word "waiver," telling Beaman he would be better off with a jury, and the thoughtful exchange between the court and the defendant demonstrated in the record. This conclusion is reinforced by the sentencing hearing transcript months later in which it is reiterated that Beaman intentionally waived his jury trial right prior to trial and attempted to gain a benefit from it by arguing the waiver should be taken into favorable consideration in granting Beaman a reduced sentence.

We emphasize further that just the form of a waiver alone cannot be an appellate court's determinant. Full consideration of the facts and circumstances surrounding a defendant's waiver of his or her jury trial right is necessary in deciding whether a knowing and voluntary waiver occurred in any given case. In other words, the form of the process is not a substitute for the court's careful scrutiny of the facts and circumstances, which give important context to the process. See *Patton v. United States*, 281 U.S. 276, 312-13, 50 S. Ct. 253, 74 L. Ed. 854 (1930) (duty of the trial court is not to be discharged "as a mere matter of rote, but with sound and advised discretion, with an eye to avoid unreasonable or undue departures from that mode of trial or from any of the essential elements thereof, and with a caution increasing in degree as the offenses dealt with increase in gravity").

Based on the facts and circumstances in this particular case, we hold that Beaman's jury trial waiver was knowing and voluntary. The district court began its dialogue with Beaman by asking if it was his "desire to *waive* a jury for this trial." (Emphasis added.) The district court communicated that Beaman had a right he would be relinquishing, and the dialogue between them confirmed that the judge and defendant were talking about the same thing, *i.e.*, Beaman's right and the abandonment of that right. Beaman responded during this discussion by acknowledging his explicit preference for a bench trial by twice saying, "I put it in your hands." The remaining interchange between the judge and Beaman shows that Beaman was not under duress and confirms he understood it

was most likely in his best interest to have a jury instead of a bench trial.

Finally, Beaman argues the district court was required to inform him that 12 jurors would have to unanimously convict him. But our court has never required this to effectuate a valid waiver. *Irving*, 216 Kan. at 590 ("[F]or a criminal defendant to effectively waive his right to a trial by jury, the defendant must first be advised by the court of his right to a jury trial, and he must personally waive this right in writing or in open court for the record."). On the contrary, we have held a waiver knowingly and voluntarily made even when the district court did not inform the defendant of his right to a unanimous verdict. See *Clemons*, 273 Kan. at 340-41.

In Beaman's case, the district court affirmatively engaged Beaman in a discussion about the possible consequences of his jury trial waiver, including pointedly advising Beaman that "you would be better off taking this case to a jury." We hold that the record demonstrates Beaman's jury trial waiver was made knowingly and voluntarily.

## DENIAL OF REQUESTED CONTINUANCE

Beaman argues next that the district court erred in denying his request for a sentencing hearing continuance to research Jessica's Law issues and possibly raise a cruel and unusual punishment argument under the Eighth Amendment to the United States Constitution or Section 9 of the Kansas Constitution Bill of Rights.

### Standard of Review

The parties dispute the standard of review. The State claims the district court may grant a continuance for good cause shown and that its decision is reviewed for an abuse of discretion, citing *State v. Stevens*, 285 Kan. 307, 322-23, 172 P.3d 570 (2007). Beaman claims the issue involves statutory interpretation of the good-cause statute, K.S.A. 22-3401, triggering unlimited appellate review. Beaman cites *State v. White*, 279 Kan. 326, 331-32, 109 P.3d 1199 (2005). The State is correct.

The *Stevens* case directly addresses a defendant's request for continuance. *Stevens*, 285 Kan. at 322-23 (citing *State v. Cook*, 281

Kan. 961, 986, 135 P.3d 1147 [2006]) ("In a criminal case, the decision to continue a case lies within the sound discretion of the district court."); see also *State v. Carter*, 284 Kan. 312, 318, 160 P.3d 457 (2007) (" 'K.S.A. 22-3401 provides a district court may grant a continuance "for good cause shown," and its refusal to grant a continuance will not be disturbed on appeal absent a showing of an abuse of discretion.' "). We consider this issue based on an abuse of discretion standard.

*Discussion*

Just before the sentencing hearing began, which was nearly 2 months after Beaman's conviction, Beaman filed a motion to continue sentencing with two stated justifications in support. First, he claimed the State needed time to consider his recently filed departure motion. Second, Beaman's attorney was still researching an additional issue pertaining to sentencing, which he said "may" result in another motion. The State responded that it did not need additional time for the departure issue. It also opposed continuance for the additional research time because the defense had 2 months to file any other motions and had not explained why the research could not have been completed during the time given and because the victim's family was in the courtroom ready for closure.

When confronted with the district court's confusion on what else Beaman might want to file, defense counsel responded that he had found a case in which the defendant contested the Jessica's Law statute as being unconstitutional for first-time offenders as cruel or unusual punishment. Counsel said any additional motion would "just be on the proportionality of it . . . other sentencing cases that have been decided based on proportionality issues that the Supreme Court has issued in the past."

The district court responded that the cruel and unusual punishment argument could be raised on appeal, saying to defense counsel, "I don't really think that's a reason to delay this sentencing. As I say, it's an issue that is going to be raised in every Jessica's Law case until the Supreme Court decides it. But I don't see it as a basis to continue the sentencing in this matter." The court immediately asked whether Beaman had had an opportunity to review

the criminal history report. Beaman's counsel confirmed that he had reviewed the report and concurred with its contents. Then, the court proceeded with the sentencing hearing.

To support his argument that the district court erred, Beaman cites *State v. Ortega-Cadelan*, 287 Kan. 157, 194 P.3d 1195 (2008), and *State v. Seward*, 289 Kan. 715, 217 P.3d 443 (2009), which both held that issues concerning challenges to Jessica's Law sentencing as cruel and unusual punishment would not be considered on appeal if not first raised in the district court. Beaman argues the district court abused its discretion by basing its ruling on an error of law. But the threshold question does not focus on Jessica's Law or the merits of what Beaman might have said; it is whether the district court abused its discretion by denying Beaman's request to further study this issue.

A district court may grant a continuance for good cause shown. K.S.A. 22-3401. From the record before us, Beaman did not demonstrate good cause as to why he could not research the applicable caselaw on the cruel and unusual punishment issue within the 60 days prior to sentencing. And neither in his brief nor during oral arguments did he explain why he was unable at the time of sentencing to make the cruel and unusual punishment argument. We note that *Ortega-Cadelan* predates Beaman's trial and sentencing, so counsel easily could have identified the issue before the sentencing hearing. In fact, *Ortega-Cadelan* lays out the three-pronged test for an analysis of a cruel or unusual punishment claim. 287 Kan. at 161. The case also cites the reader to *State v. Freeman*, 223 Kan. 362, 574 P.2d 950 (1978), which remains this court's touchstone for such issues. *Ortega-Cadelan*, 287 Kan. at 161.

Finally, simply arguing that there "may" be an issue worthy of another motion is insufficient to justify a continuance. Mere speculation that with more time something favorable may happen for the defendant does not constitute good cause. *State v. Zimmer*, 198 Kan. 479, 486, 426 P.2d 267 (1967). We hold that the district court did not abuse its discretion in denying Beaman's continuance motion.

## DEPARTURE MOTION DENIAL

Beaman next argues the district court erred in denying his mo-

tion for a departure sentence. In that motion, he claimed he should receive a lighter sentence because: (1) he had no prior criminal history; (2) he took responsibility for the crimes in this case during interviews with police and at bench trial; (3) he went to a bench trial specifically to spare the victim unnecessary embarrassment of testifying in front of a jury; (4) he was not a threat to the community; (5) the off-grid offense in this case, had it occurred a week later, would only have been a severity level three felony; (6) he had shown remorse; (7) he was well-behaved while incarcerated during the pendency of the trial; and (8) he was willing to participate in any sex offender treatment programs the court might require.

*Standard of Review*

Beaman incorrectly argues that our standard of review is unlimited, claiming that the court is interpreting the departure statute. It is well settled that appellate courts review the denial of a sentencing departure motion for an abuse of discretion. *State v. Roberts*, 293 Kan. 1093, 1097, 272 P.3d 24 (2012). Judicial discretion is abused if judicial action is (1) arbitrary, fanciful, or unreasonable, *i.e.*, no reasonable person would take the view adopted by the trial court; (2) based on an error of law, *i.e.*, the discretion is guided by an erroneous legal conclusion; or (3) based on an error of fact, *i.e.*, substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. 293 Kan. at 1097; *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

*Discussion*

Under the departure statute, a sentencing court "shall" impose a hard 25 sentence in Jessica's Law cases "unless the judge finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 21-4643(d). The statute provides a nonexclusive list of factors the court may consider when determining whether to grant a departure. K.S.A. 21-4643(d)(1)-(6). But even though there may be mitigating factors, a district court is not required to depart simply because a mitigating factor exists. *State v. Baptist*, 294 Kan. 728, 280 P.3d 210, 215-16 (2012).

In exercising its discretion under the statute, the district court first reviews the mitigating circumstances asserted and then weighs them against any aggravating circumstances, ultimately determining whether substantial and compelling reasons warrant a departure. The important question is whether those mitigating factors *together* create substantial and compelling reasons. 280 P.3d at 216. In a Jessica's Law case such as this, Beaman needed to show substantial and compelling reasons in order to justify a more lenient sentence. See 280 P.3d at 215-16.

The State opposed Beaman's departure motion, claiming he never took responsibility for his crimes because he continuously accused the victim of lying. It argued that sparing the victim from testifying at a jury trial was really just to help Beaman obtain leniency during sentencing. The State also claimed Beaman was still a danger to the community and did not show remorse.

The district court denied Beaman's motion, indicating that even though Beaman did not have any criminal history, "this is exactly the kind of behavior that the legislature intended to proscribe." No more reason was provided, though the court was not required to provide one. See K.S.A. 21-4643(d); *Baptist*, 280 P.3d at 216 (district court not required to state reasons why departure motion denied; must only recite substantial and compelling reasons if departure granted).

On appeal, Beaman does not detail how each point in his motion justified departure. He considers them together and claims in one sentence that "[t]he mitigating circumstances cited for departure should have compelled the court to find there were substantial and compelling reasons to depart in this case."

Although the district court should keep in mind that the question is whether the mitigating factors together create substantial and compelling reasons, the *Baptist* court cited a number of cases negating most of Beaman's departure motion points. See, *e.g.*, *State v. Plotner*, 290 Kan. 774, 780-81, 235 P.3d 417 (2010) (no error in denying departure motion even though defendant claimed he took responsibility for his actions, purposefully pleaded guilty to save his victims from testifying at trial, and lacked prior sexually motivated convictions); *State v. Trevino*, 290 Kan. 317, 322-23, 227 P.3d

951 (2010) (no abuse of discretion even though defendant had little criminal history); *State v. Robison*, 290 Kan. 51, 55-57, 222 P.3d 500 (2010) (no error even though defendant had little criminal history, accepted responsibility, and demonstrated remorse); *State v. Spotts*, 288 Kan. 650, 655-56, 206 P.3d 510 (2009) (no error even though defendant lacked prior sexually motivated convictions, accepted responsibility, demonstrated remorse, and entered a no contest plea that saved the victim from testifying at trial); *Ortega-Cadelan*, 287 Kan. at 162-66 (no error when defendant admitted guilt, had little criminal history, and was deemed a good candidate for sex offender treatment).

The only mitigating factors raised by Beaman that are not directly addressed by these cases are: (1) that had the crime occurred a week later, it would not have been classified as an off-grid offense; and (2) that he was well-behaved while incarcerated awaiting trial. A reasonable person could agree with the district court that departure from the hard 25 sentence was unjustified based on these two factors. We hold that the district court did not abuse its discretion.

## ILLEGAL SENTENCE

Beaman argues the district court erred in sentencing him to life without parole for 25 years because another statute, K.S.A. 22-3717(b)(2), provides that he should be eligible for parole after serving 20 years. He claims the rule of lenity favors the defendant and that he should be resentenced according to the more favorable statute. Whether a sentence is illegal is an issue of statutory interpretation and is a question of law subject to unlimited review. *State v. Cash*, 293 Kan. 326, 327, 263 P.3d 786 (2011).

Beaman concedes he raises this issue for the first time on appeal but argues it is a pure question of law and an exception applies. The State does not challenge preservation of the issue, so it may be considered. See 293 Kan. at 327 (Considering merits of parole eligibility issue because "the State does not favor us with any argument on whether the issue is preserved for appellate review.").

Parole eligibility for Jessica's Law cases is governed by K.S.A. 21-4643. The statute provides that for crimes of rape and aggra-

vated indecent liberties of victims under 14 years of age committed after July 1, 2006, the defendant shall be sentenced to a mandatory minimum of 25 years in prison. But Beaman claims he is parole eligible under K.S.A. 22-3717(b)(2), which says in relevant part that a defendant sentenced for a crime committed after July 1999 shall be eligible for parole after 20 years of imprisonment.

Beaman was sentenced to a hard 25 year sentence on the rape conviction. He asks this court to apply the rule of lenity, which he gleans from this court's decision in *State v. Horn*, 288 Kan. 690, 206 P.3d 526 (2009). In *Horn* this court held that where legislative intent is lacking to resolve two conflicting statutory provisions, the rule of lenity resolves the conflict in favor of the defendant. *Horn*, 288 Kan. at 693. But a similar argument challenging parole eligibility has recently been raised and rejected by this court several times. See, *e.g.*, *State v. Cameron*, 294 Kan. 884, 281 P.3d 143 (2012); *State v. Baptist*, 280 P.3d at 213-14; *State v. Chavez*, 292 Kan. 464, 468-69, 254 P.3d 539 (2011); *Cash*, 293 Kan. at 328-29; *State v. Hyche*, 293 Kan. 602, 603-04, 265 P.3d 1172 (2011).

Without attempting to distinguish his case, Beaman's claim lacks merit and the district court did not err in sentencing him to a hard 25 years.

## POSTRELEASE SUPERVISION

Beaman claims the district court erred in sentencing him to lifetime postrelease supervision instead of parole. The State concedes the district court should have imposed lifetime parole instead of lifetime postrelease supervision for the rape, but maintains Beaman was correctly sentenced to postrelease supervision for the aggravated indecent liberties conviction.

Under K.S.A. 22-3717(d)(1), defendants convicted of on-grid crimes may be ordered to postrelease supervision but are not eligible for parole. Beaman does not distinguish which sentence he challenges—the rape or aggravated indecent liberties. The State correctly points out that Beaman's aggravated indecent liberties conviction should include postrelease supervision. This is because the victim had turned 14 by the time the second crime happened, and Beaman was charged with a severity level 3 person felony—

an on-grid crime. As for Beaman's rape sentence that includes lifetime postrelease supervision, the conviction is off-grid, triggering application of K.S.A. 22-3717(b)(5). That statute authorizes parole eligibility exclusively after serving the mandatory term of imprisonment.

This court recently addressed postrelease supervision for an off-grid conviction of aggravated indecent liberties with a child. In *Cash*, the defendant was sentenced to a hard 25 year "indeterminate" life sentence, which the court found to mean that if the defendant were to ever be released from prison it would be because the release was granted by a *parole* board, not court-ordered postrelease supervision. It found the court erred in imposing lifetime postrelease supervision and vacated that portion of his sentence. 293 Kan. at 330.

The same holds true in this case. The district court should have only sentenced Beaman to a life sentence with no parole for 25 years for the rape conviction, not lifetime postrelease supervision. Thus, this portion of his sentence should be vacated. See *Cash*, 293 Kan. at 331.

## ELECTRONIC MONITORING

Beaman next argues the district court erred by imposing electronic monitoring as a parole condition because it is the parole board—not the district court— hat has exclusive authority to make the order. The State insists the district court never sentenced Beaman to electronic monitoring. This issue requires interpretation of the statute concerning electronic monitoring, K.S.A. 22-3717(u). Statutory interpretation raises a question of law over which this court has unlimited review. *State v. Mason*, 294 Kan. 675, 279 P.3d. 707, 709 (2012).

Electronic monitoring is required under K.S.A. 22-3717(u) for off-grid indeterminate life sentences. But as Beaman correctly argues, the sentencing court does not have authority to impose such parole conditions. *Mason*, 279 P.3d at 709. The more important question, as the State notes, is whether the district court actually sentenced Beaman to electronic monitoring. We hold that it did not, although the record is not entirely clear.

The sentencing journal entry reflects a handwritten check mark next to an option for the rape conviction that indicates electronic monitoring is part of the sentence imposed. The journal entry does not isolate the electronic monitoring as something that might happen—it appears as part of Beaman's sentence.

But a criminal sentence is effective when it is imposed from the bench, not the sentencing journal entry. *Mason*, 279 P.3d at 709. At the sentencing hearing, the only mention of electronic monitoring was at the very end, when the State said, "Judge, he needs to be informed that he will—if he gets out of prison, he'll be required to register for life and he'll be on an electronic monitor for life." The court replied, "That is correct. And your post-release supervision will be for life."

The State argues this exchange between the district court and Beaman simply reflects that the court was informing him about what lifetime postrelease supervision would entail and was not an order for electronic monitoring, which would have been in conflict with K.S.A. 22-3717(u). We accept this explanation, but that does not change the necessity for changing the subsequent journal entry.

As this court held in *Mason*, "[t]he sentence reflected in the journal entry is erroneous; however, there is no similar problem with the sentence pronounced from the bench." *Mason*, 279 P.3d at 709. The same holds true here. We remand the case to the district court to issue a nunc pro tunc order under K.S.A. 22-3504(2) correcting the sentencing journal entry error so it reflects the actual sentence pronounced. See *State v. Antrim*, 294 Kan. 632, 279 P.3d 110 (2012).

## SUBMITTING AGGRAVATING FACTORS TO THE JURY

Beaman's final issue is familiar to this court. It concerns the district court's decision to sentence him to the aggravated term without first submitting aggravating factors to a jury. He claims that violates *Cunningham v. California*, 549 U.S. 270, 127 S. Ct. 856, 166 L. Ed. 2d 856 (2007), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). But Beaman correctly notes this issue has been decided against him by this court. See *Chavez*, 292 Kan. at 470-71; *State v. LaBelle*, 290 Kan.

529, 539, 231 P.3d 1065 (2010); *State v. Houston*, 289 Kan. 252, 278, 213 P.3d 728 (2009); *State v. Johnson*, 286 Kan. 824, 851-52, 190 P.3d 207 (2008). We continue to reject this argument.

The defendant's convictions are affirmed. We vacate the post-release supervision order for the rape conviction and remand to the district court to issue a nunc pro tunc order to correct the electronic monitoring portion of the sentencing journal entry. We affirm the remainder of his sentence.