IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 118,608

STATE OF KANSAS,
*Appellee*,

v.

COTY RYLAN NEWMAN,
*Appellant*.

SYLLABUS BY THE COURT

1.

When reviewing a district court's consideration of a motion to withdraw a guilty plea before sentencing, an appellate court does not reweigh evidence or reassess witness credibility, but will reverse the lower court only for an abuse of discretion.

2.

A sentencing court has no authority to impose lifetime postrelease supervision on an off-grid, indeterminate life sentence.

Appeal from Shawnee District Court; EVELYN Z. WILSON, judge. Opinion filed February 14, 2020. Affirmed in part and vacated in part.

*Peter Maharry*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Kristafer R. Ailslieger*, deputy solicitor general, and *Derek Schmidt*, attorney general, were on the brief for appellee.

1

The opinion of the court was delivered by

ROSEN, J.: Coty Newman pleaded guilty to first-degree felony murder and attempted second-degree intentional murder. Before sentencing, Newman moved to withdraw those pleas. The district court denied his motions and imposed a life sentence for the first-degree murder conviction and a consecutive 59 months' imprisonment for the second-degree murder conviction. The district court also ordered lifetime postrelease supervision for the first-degree murder conviction and 36 months of postrelease supervision for the second-degree murder conviction. Newman appeals the denials of his motions to withdraw his pleas and the imposition of lifetime supervision. We affirm the denials of his motions but vacate the lifetime postrelease supervision.

FACTUAL AND PROCEDURAL BACKGROUND

On October 27, 2010, the State charged Coty Newman with first-degree felony murder; alternative counts of attempted second-degree intentional murder or aggravated battery; attempt to distribute marijuana; and conspiracy to distribute marijuana. The State later amended the complaint to add first-degree intentional murder as an alternative to first-degree felony murder.

Newman agreed to plead guilty to first-degree felony murder and attempted second-degree intentional murder and, in exchange, the State agreed to dismiss the alternative and remaining counts. The parties agreed to recommend a life sentence for the first-degree murder charge and a consecutive 59 months' imprisonment for the second-degree murder charge. They further agreed that Newman would not be eligible for parole until he served 20 years and 59 months in prison and that neither party would request a departure sentence.

2

On March 22, 2013, the district court held a plea hearing. Newman pleaded guilty to first-degree felony murder and attempted second-degree intentional murder. The district court found that Newman voluntarily entered into the agreement and accepted his pleas.

On July 18, 2013, Newman filed a motion to withdraw his pleas. He argued that the court should allow the withdrawal for two reasons: his mother had been hospitalized during the plea hearing, which caused him to experience extreme physical and emotional distress; and he had newly discovered evidence that would exonerate him. The State responded to this motion, arguing that Newman had not indicated he was distressed during the hearing and that the newly discovered evidence was not credible.

At a hearing on Newman's motion, Newman's mother testified that she had been hospitalized on March 21, 2013, due to complications related to diabetes and had spent a day and a half in the intensive care unit. She also testified that she and Newman discussed over the phone ways to withdraw his plea. The district court admitted State exhibits that both parties stipulated represented recorded jail calls between Newman and his mother.

James Martin also testified at the hearing. He stated that he met Newman while incarcerated at the Ellsworth Correctional Facility while Newman was there as a result of the charges in this case. Martin stated that he had been present at the time of the alleged killing and that Newman, while present, had not shot anyone.

After this hearing, the State filed a supplemental response and motion to strike Martin's testimony. In this motion, the State alleged that Martin had been incarcerated at

3

the time of the alleged crimes and, consequently, could not have been a witness to those crimes. At a second hearing, a records clerk with the Ellsworth Correctional Facility testified that a man named James Martin with the same date of birth, social security number, and DOC number as the James Martin who testified had been in custody at the time of the alleged crimes.

On October 17, 2013, the district court denied Newman's motion to withdraw his pleas.

On October 25, 2013, Newman filed a pro se "Motion to Vacate Plea Bargain Due to Ineffective Assistance of Counsel."

At a hearing on this motion, Newman testified that Jon Whitton had been his counsel at the time he was considering a plea and that he had told Whitton on the day of the plea hearing that he did not want to plead guilty. Newman stated that Whitton had informed him he could plead guilty and then "pull it back" if he "g[o]t cold feet" and wanted to go to trial. Newman said that he would not have pleaded guilty if he had known he could not withdraw the plea for any reason. Newman also testified that, before pleading, he told Whitton about some possible exculpatory witnesses and Whitton told him he would look into them after he entered his plea. During the State's cross-examination of Newman, Newman testified that he remembered telling his mother on a phone call that, if his original motion to withdraw his plea did not work, he was going to have to claim his counsel had been ineffective.

Newman's wife also testified at the hearing. She stated that she had not wanted Newman to plead guilty but Whitton had informed her and Newman on the day of the

plea hearing that Newman only had an hour to decide whether to accept the plea and could later withdraw it.

Whitton also testified at the hearing. He stated that he never told Newman he could withdraw his plea based on "cold feet." He informed Newman that it is possible to withdraw a plea but it very rarely happens and that Newman should not enter a plea based upon an understanding that he could withdraw it at a later time. Newman asked for an example of when a defendant can withdraw a plea, and Whitton told him a court will permit the withdrawal based on ineffective assistance of counsel or newly discovered evidence. Whitton also stated that he told Newman it is much more difficult to withdraw a plea after sentencing. Whitton testified that he did not believe Newman mentioned any exculpatory witnesses during this conversation with whom Whitton had not already spoken.

On June 10, 2014, the district court denied Newman's second motion to withdraw his pleas.

On July 23, 2014, the district court sentenced Newman to life in prison with no chance of parole for 20 years for the first-degree murder conviction and 59 months in prison for the attempted second-degree murder conviction, to be served consecutively. The court also imposed lifetime postrelease supervision for the first-degree murder conviction and 36 months of postrelease supervision for the second-degree murder conviction.

Newman appealed the denials of his motions to withdraw his pleas and the district court's imposition of lifetime postrelease supervision to this court.

ANALYSIS

*Withdraw of pleas*

Newman argues that the district court erred when it denied his motions to withdraw his pleas.

A district court may allow a defendant to withdraw a guilty plea for good cause any time before sentencing. K.S.A. 2018 Supp. 22-3210(d)(1). In determining whether the defendant has shown good cause, the court generally considers the following three "benchmark" factors: "(1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made." *State v. Edwards*, 309 Kan. 830, 836, 440 P.3d 557 (2019).

When reviewing the district court's consideration of such a motion, we will reverse the lower court only for an abuse of discretion. We will not reweigh evidence or reassess witness credibility. *Edwards*, 309 Kan. at 836.

First, Newman argues that the district court abused its discretion when it concluded that he had not shown good cause to withdraw his plea based on his claims of emotional distress. Newman insists that the stress and pressure caused by his mother's health condition and pressure from his attorney to plead guilty "combined to overwhelm him" and rendered his plea involuntary.

In its ruling, the district court found that Newman had probably been under "some significant pressure at the time of the plea hearing because trial was fast approaching,"

but that this pressure was "inevitable." The court also found that Newman had assured the court several times that "he was able to think clearly, was able to understand the proceedings, and had taken enough time to consider whether he wanted to enter a plea of guilt." The court also found that "[a]t no time did [Newman] mention any tension caused by his mother's medical condition" and that nothing in the recorded calls suggested that Newman was "nervous, tense, or in any way upset at the time of the plea because of his mother's condition or hospitalization." Based on these findings, the district court concluded that Newman had failed to show that he was misled, coerced, mistreated, or unfairly taken advantage of.

The district court also found that Newman had an extensive plea hearing, his mental health had not been questioned, and he had not raised any new issues. Consequently, the court concluded that Newman's plea was fairly and understandingly made.

Newman has offered no authority suggesting that the district court abused its discretion when it concluded that neither his mother's hospitalization nor the pressures of impending trial led to a coerced, misunderstood, or otherwise unfair plea. He simply disagrees with the district court's assessment of the evidence. We will not reweigh that evidence. We affirm the district court's decision.

Next, Newman argues that the district court erred when it denied his motion because his counsel was ineffective. Newman avers that his counsel told him he could withdraw his plea if he decided he wanted to go to trial and that the evidence does not support Whitton's testimony that he did not make this statement.

7

In regard to this claim, the district court found that Whitton's testimony was more credible than Newman's, and, consequently, that Whitton had not informed Newman he could withdraw his plea if he had second thoughts. Accordingly, the court concluded that Newman had failed to show good cause to withdraw his plea based on ineffective assistance of counsel.

Newman acknowledges that we defer to the district court's credibility determinations but insists we cannot do so here because the evidence is more supportive of his version of events.

As we noted above, we will not reassess the credibility of evidence. The district court concluded that Whitton was more credible than Newman and we defer to that finding.

We conclude the district court did not abuse its discretion when it denied Newman's motions to withdraw his pleas.

*Lifetime Postrelease Supervision*

The parties agree that the district court erred when it sentenced Newman to lifetime postrelease supervision on the first-degree murder conviction. They are correct. "'[A] sentencing court has no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence.'" *State v. Summers*, 293 Kan. 819, 832, 272 P.3d 1 (2012). Newman received an off-grid, indeterminate life sentence for his first-degree murder conviction. See K.S.A. 21-4706(c). Consequently, he becomes eligible for parole after serving 20 years of that sentence. K.S.A. 2010 Supp. 22-3717(b)(2); K.S.A. 21-4706; K.S.A. 21-3401; see also *State v. Johnson*, 309 Kan. 992,

997-98, 441 P.3d 1036 (2019). The district court had no authority to impose lifetime postrelease supervision. Accordingly, we vacate the order for lifetime postrelease supervision.

CONCLUSION

The district court's decision denying the motions to withdraw Newman's pleas is affirmed. The portion of the district court's sentencing order imposing lifetime postrelease supervision is vacated.

HENRY W. GREEN, JR., J., assigned.[1]
STEVE LEBEN, J., assigned.[2]

---

[1]**REPORTER'S NOTE:** Judge Green, of the Kansas Court of Appeals, was appointed to hear case No. 118,608 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Justice Lee A. Johnson.

[2]**REPORTER'S NOTE:** Judge Leben, of the Kansas Court of Appeals, was appointed to hear case No. 118,608 under the authority vested in the Supreme Court by K.S.A. 2019 Supp. 20-3002(c) to fill the vacancy on the court by the retirement of Chief Justice Lawton R. Nuss.

9