NOT DESIGNATED FOR PUBLICATION

No. 121,141

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TRENT L. ROBINSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Jackson District Court; NORBERT C. MAREK, JR., judge. Opinion filed July 31, 2020. Affirmed in part and vacated in part.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Michael J. Duenes*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., STANDRIDGE and POWELL, JJ.

PER CURIAM: Trent L. Robinson moved to withdraw his plea of guilty to rape of a minor under the age of 14, arguing, in part, that he was not informed of the maximum possible sentence he could receive as a result of his plea. The district court denied Robinson's motion and sentenced him to life in prison with the possibility of parole in 25 years. Additionally, the court ordered lifetime postrelease supervision and lifetime electronic monitoring on Robinson. Robinson timely appealed. We find that the district court did not err in denying Robinson's motion to withdraw his guilty plea, but it did err in ordering lifetime postrelease supervision and lifetime electronic monitoring. Accordingly, we affirm in part and vacate the lifetime postrelease supervision portion of

1

Robinson's sentence, as well as the district court's order for lifetime electronic monitoring.

FACTUAL AND PROCEDURAL HISTORY

In April 2012, the State charged Trent L. Robinson with rape of a child under 14 years of age while Robinson was over the age of 18.

Because the alleged crime occurred on tribal land, Robinson's appointed counsel sought a plea deal which would ensure that the federal government did not prosecute Robinson for the same crime. A prosecutor with the United States Attorney's Office in the District of Kansas sent Robinson's counsel a letter indicating that the federal government would not prosecute Robinson if he met certain conditions. In part, Robinson had to plead guilty as charged and agree to a "sentence of incarceration for a 'hard' twenty-five years."

At the plea hearing, Robinson agreed that he and his counsel discussed the letter from the United States Attorney's Office. Robinson also acknowledged that his counsel advised him that as a result of his plea he "could be confined . . . for a minimum of 25 years up to a maximum of life."

Before accepting Robinson's plea, the district court reiterated that his crime was "punishable by a 25—minimum 25 up to life imprisonment." Robinson also recognized that he was agreeing to "the hard 25 years." Robinson then pleaded no contest.

The State provided a factual basis for Robinson's plea stating, in part, that a child under the age of 14 was pregnant and indicated that Robinson was the father. The court accepted Robinson's plea.

Before being sentenced, Robinson expressed dissatisfaction with his counsel. Robinson believed that his counsel did not adequately explain the consequences of his plea. Robinson indicated that he wanted another attorney, but the district court denied his request. The district court sentenced Robinson to "25 years to life without the possibility of parole."

Robinson appealed his sentence, arguing that the sentence was illegal. This court agreed, holding that the district court "failed to sentence Robinson to a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years, followed by the possibility of parole, as required by K.S.A. 2017 Supp. 21-6627(a)(1)." *State v. Robinson*, No. 117,173, 2018 WL 1545677, at *2 (Kan. App. 2018) (unpublished opinion). This court remanded the case for resentencing.

Before resentencing, Robinson's new defense counsel filed a motion to withdraw plea. Robinson argued:  (1) the district court explained his potential sentence using the same language that led to the illegality of his original sentence, (2) he had issues with his defense counsel at the time of the plea, (3) he did not understand the plea agreement, and (4) he and his counsel at the time of the plea had not spoken much about the case. Robinson later filed his own pro se motion for new counsel and a pro se motion to withdraw plea. Robinson's pro se motion to withdraw his plea essentially argued that he did not understand the consequences of his plea at the time he made it.

At a hearing on Robinson's motions, Robinson again asserted that his first attorney did not explain things to his satisfaction. He also explained that, due to his age, there was little difference between being convicted at trial and his sentence after his plea deal. The district court granted Robinson's request for a new attorney and continued the hearing.

Robinson filed a second motion to withdraw his plea. He reiterated that he did not understand the consequences of his plea and his likely sentence.

3

Robinson declined to present evidence at the hearing on his motions. The district court noted that it was required to determine whether: (1) Robinson was represented by competent counsel; (2) Robinson was misled, coerced, mistreated, or unfairly taken advantage of; and (3) the plea was fairly and understandingly made. After considering the factors, the district court denied Robinson's motion to withdraw his plea.

Robinson's counsel filed a motion for a dispositional departure. Before sentencing, Robinson requested that his counsel withdraw because he was not doing what Robinson asked him to do. The district court denied his request. The district court also denied Robinson's motion for a dispositional departure and sentenced him to life imprisonment with the possibility of parole in 25 years. The court also ordered lifetime postrelease supervision and lifetime electronic monitoring.

Robinson timely appeals.

## ANALYSIS

Robinson raises three issues on appeal. First, he argues that the district court erred by denying his motion to withdraw his plea. Second, he argues the district court erred by ordering him to serve a lifetime term of postrelease supervision. Finally, he argues the district court had no authority to order lifetime electronic monitoring.

*The district court did not err by denying Robinson's motion to withdraw his plea.*

For his first issue on appeal, Robinson argues the district court erred in denying his motion to withdraw his plea because he was not accurately informed of the potential sentence he faced.

*We review the district court's actions for an abuse of discretion.*

"A plea of guilty or *nolo contendere*, for good cause shown and within the discretion of the court, may be withdrawn at any time before sentence is adjudged." K.S.A. 2019 Supp. 22-3210(d)(1). On appeal, the defendant must establish that the trial court abused its discretion in denying a presentence motion to withdraw plea. *State v. DeAnda*, 307 Kan. 500, 503, 411 P.3d 330 (2018).

A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

*The district court did not abuse its discretion.*

Under K.S.A. 2019 Supp. 22-3210(d)(1), a defendant may withdraw his or her plea of guilty or no contest before sentencing "for good cause shown and within the discretion of the court." The same standard applies when a defendant has been sentenced, the sentence is vacated on appeal, and the appellate court remands the case for resentencing. See *DeAnda*, 307 Kan. at 501, 503.

Three factors (often referred to as the *Edgar* factors) generally guide a district court's consideration of whether a defendant has demonstrated the good cause required by K.S.A. 2019 Supp. 22-3210(d)(1) to withdraw a plea prior to sentencing:  (1) whether the defendant was represented by competent counsel; (2) whether the defendant was misled, coerced, mistreated, or unfairly taken advantage of; and (3) whether the plea was fairly and understandingly made. *State v. Edgar*, 281 Kan. 30, 36, 127 P.3d 986 (2006). These factors should not be applied mechanically and to the exclusion of other factors. *State v. Fritz*, 299 Kan. 153, 154, 321 P.3d 763 (2014). These factors establish "'viable benchmarks'" for the district court when exercising its discretion, but the court should not

ignore other facts that might exist in a particular case. *State v. Schaefer*, 305 Kan. 581, 588, 385 P.3d 918 (2016).

On appeal, Robinson does not argue that he was not represented by competent counsel or that he was misled, coerced, mistreated, or unfairly taken advantage of. Instead, his only argument is that the plea was not fairly and understandingly made because the district court did not inform him of the potential sentence he faced.

The district court may accept a defendants plea after, among other requirements, the court has "informed the defendant of the consequences of the plea, including the specific sentencing guidelines level of any crime . . . and of the maximum penalty provided by law which may be imposed upon acceptance of such plea." K.S.A. 2019 Supp. 22-3210(a)(2). While the district court is required to inform the defendant of the maximum penalty, the failure to do so can be deemed harmless if the record shows that the defendant was advised of the maximum penalty through some other means. See *State v. Johnson*, 307 Kan. 436, 445-46, 410 P.3d 913 (2018).

As a result of his plea, the maximum possible conviction Robinson faced was life imprisonment. See K.S.A. 2017 Supp. 21-6627(a)(1)(B). The question facing this court is whether the district court informed Robinson that he was facing life imprisonment as a result of his plea. It did.

At his plea hearing, the district court informed Robinson that his crime was "punishable by a 25—minimum 25 up to life imprisonment." This was a correct statement of the law and complied with the requirement that the district court inform the defendant of the maximum penalty that could result as a consequence of his plea. See K.S.A. 2019 Supp. 22-3210(a)(2). The district court's statement was not the most artful way of informing Robinson of the consequences of his plea, but the court was correct because it informed Robinson that the penalty could be "life imprisonment." Moreover, at

6

his plea hearing, Robinson acknowledged that he "could be confined . . . for a minimum of 25 years up to a maximum of life."

Kansas law requires no more than that the district court inform a defendant of the maximum possible penalty the defendant faces as a result of their plea. Here, the district court informed Robinson that he could face life in prison as a result of his plea. And Robinson was obviously aware that he could face life in prison.

Robinson argues that none of the statements made by the court, his counsel, or the prosecutor "accurately reflected" his potential sentence because the statements were not clear that he would receive a life sentence with a possibility of parole after 25 years. But Robinson offers no case law supporting his argument. Under K.S.A. 2019 Supp. 22-3210(a)(2), the district court is only required to inform the defendant of the maximum possible penalty, which the court did in this case.

Robinson fails to meet his burden to prove that the district court abused its discretion in denying his presentence motion to withdraw plea. The district court's decision was not based on an error of law or an error of fact. Nor was the district court's decision unreasonable under the circumstances.

*The district court erred by ordering Robinson to serve a lifetime term of postrelease supervision.*

For his second issue on appeal, Robinson argues that the district court erred by ordering him to serve a lifetime term of postrelease supervision. The State agrees with Robinson. Whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504 is a question of law over which the appellate court has unlimited review. See *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016).

While sentencing Robinson, the district court ordered lifetime postrelease supervision. However, the district court had "'no authority to order a term of postrelease supervision in conjunction with an off-grid indeterminate life sentence.'" *State v. Newman*, 311 Kan. 155, 160, 457 P.3d 923 (2020). Robinson received an off-grid indeterminate life sentence for his rape conviction. See K.S.A. 2017 Supp. 21-6627(a)(1)(B). Therefore, the district court erred when it imposed lifetime postrelease supervision and that portion of Robinson's sentence must be vacated.

*The district court did err by including lifetime electronic monitoring as part of Robinson's sentence.*

For his final issue, Robinson argues the district court erred when it imposed lifetime electronic monitoring as part of his sentence. Again, whether a sentence is illegal within the meaning of K.S.A. 2019 Supp. 22-3504 is a question of law over which the appellate court has unlimited review. See *Lee*, 304 Kan. at 417. Likewise, interpretation of a sentencing statute is a question of law, and the standard of review is unlimited. *State v. Warren*, 307 Kan. 609, 612, 412 P.3d 993 (2018).

Robinson argues that the district court does not have the authority to impose lifetime electronic monitoring on a defendant because Kansas statute gives the parole board that power. Under K.S.A. 2019 Supp. 22-3717(u), an inmate "sentenced to imprisonment pursuant to . . . K.S.A. 2019 Supp. 21-6627, and amendments thereto . . . shall be placed on parole for life." If the board orders "the parole of an inmate pursuant to this subsection, the board shall order as a condition of parole that the inmate be electronically monitored for the duration of the inmate's natural life." K.S.A. 2019 Supp. 22-3717(u).

Robinson relies on this statute, and the Kansas Supreme Court's statements in *State v. Beaman*, 295 Kan. 853, 869-70, 286 P.3d 876 (2012), to argue that only the parole board can impose lifetime electronic monitoring in situations such as this.

In *Beaman*, the Kansas Supreme Court was tasked with determining whether the sentence imposed by the district court included lifetime electronic monitoring. The court noted that if it did, the district court's sentence was illegal because "the sentencing court does not have authority to impose such parole conditions." 295 Kan. at 869. But the Kansas Supreme Court did not reach the issue because it accepted the State's argument that the district court was merely informing Beaman that if he were paroled he would be required to undergo lifetime electronic monitoring. 295 Kan. at 869-70. While discussing Beaman's arguments the court referred to its prior decision in *State v. Mason*, 294 Kan. 675, 677, 279 P.3d 707 (2012), where the court held "the sentencing court does not have the authority to impose parole conditions." *Beaman*, 295 Kan. at 869.

The State argues the Kansas Supreme Court opinions are inapplicable here because those opinions did not discuss K.S.A. 21-6604(r)—which was not adopted until 2012—requiring the court to order that the defendant be electronically monitored upon release from imprisonment for the defendant's natural life; or amendments to K.S.A. 22-3717(v)—again, not adopted until 2012—which limited a district court's authority to order electronic monitoring of a defendant. L. 2012, ch. 32, § 1; L. 2012, ch. 150, § 43.

*Beaman* and *Mason* both involved crimes that occurred in 2009, well before the adoption of K.S.A. 2012 Supp. 21-6604(r) and amendments to K.S.A. 2012 Supp. 22-3717(v). Likewise, here, Robinson's crimes were committed in April 2012, before the July 1, 2012 effective date of K.S.A. 2012 Supp. 21-6604(r) and amendments to K.S.A. 2012 Supp. 22-3717(v). While those statutes clearly require a district judge to order a defendant in Robinson's situation to be released onto electronic monitoring upon release from imprisonment, "[c]riminal statutes and penalties in effect at the time of the criminal

act are controlling." *State v. Rice*, 308 Kan. 1510, 1512, 430 P.3d 430 (2018). Moreover, the general rule is that statutes operate only prospectively unless there is clear legislative language to the contrary. *State v. Todd*, 299 Kan. 263, 274, 323 P.3d 829 (2014). An exception to this rule has been employed when the statutory change is merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties. The prescription of a punishment for a criminal act is substantive, not procedural, law. *State v. Hutchison*, 228 Kan. 279, 287, 615 P.2d 138 (1980).

There is no indication in K.S.A. 2012 Supp. 21-6604(r) and the amendments to K.S.A. 2012 Supp. 22-3717(v) that they were intended to apply retroactively. And the State does not argue that they were. It merely assumes that because Robinson was sentenced in March 2019, the amendments apply. But the State, also through counsel with the Attorney General's office, conceded in *State v. Peterman*, No. 111,159, 2015 WL 8587505, at *15 (Kan. App. 2015) (unpublished opinion), that a district court does not have authority to impose lifetime electronic monitoring under K.S.A. 2012 Supp. 21-6604(r) for crimes committed before July 1, 2012. The Attorney General's office provides no explanation or argument as to why or if its position has changed. As noted, our Supreme Court has held that the prescription of punishment for a criminal act is substantive, not procedural. When Robinson committed his crime, the statutory punishment provisions did not allow the district court to order lifetime electronic monitoring, only the parole board. So, the district court erred in making such an order.

Affirmed in part. The lifetime postrelease supervision portion of Robinson's sentence, as well as the district court's order for lifetime electronic monitoring, are vacated.