NOT DESIGNATED FOR PUBLICATION

No. 117,029

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANAS,
*Appellee*,

v.

COREY L. JACKSON,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; DAVID L. DAHL, judge. Opinion filed May 18, 2018.
Affirmed.

*Carol Longenecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*,
attorney general, for appellee.

Before STANDRIDGE, P.J., HILL and BUSER, JJ.

PER CURIAM: Based on seven fact stipulations with the State, the court convicted
Corey L. Jackson of the rape of a 14-year-old girl. He asks us to overturn his conviction
because he did not receive a speedy trial. More than 600 days elapsed between his
arraignment and his trial. The record reveals that most of the delay was a result of him
trying to secure a second DNA test for his defense. Jackson has not convinced us that his
constitutional right to a speedy trial has been violated and, therefore, we will not reverse
his conviction on that ground. As an additional argument, Jackson contends the district
court erred when it denied his motion to withdraw his waiver of his right to a jury trial.

1

Because the record shows that the court informed Jackson of all the legally required components for a valid jury trial waiver, we will not reverse his conviction for that reason. We have a high level of confidence that Jackson's jury waiver was both informed and voluntary. Finally, we find no error in the court imposing a Jessica's Law life imprisonment sentence in this case. We see that the sentencing court weighed the mitigating circumstances that Jackson presented against the facts of the case as required by caselaw. We find no reason to vacate this sentence. We affirm.

*Jackson stipulated to the following facts for a bench trial:*

(1)    Jackson was born on June 30, 1975.

(2)    S.R.W. was born on April 5, 2000.

(3)    Jackson had sexual intercourse with S.R.W. at some point between January 1, 2014 and February 28, 2014.

(4)    Jackson was married to S.R.W.'s mother when the sexual intercourse occurred.

(5)    S.R.W. became pregnant and gave birth on September 28, 2014.

(6)    DNA testing showed Jackson is the father of S.R.W.'s child.

(7)    Jackson has never been married to S.R.W.

Based on these stipulated facts, the district court dismissed a charge of aggravated indecent liberties with a child and convicted Jackson of rape.

At his sentencing, Jackson asked the court to impose a downward departure sentence, arguing that various mitigating factors supported departing from the presumptive Jessica's Law sentence. Unconvinced, the sentencing court denied his motion and imposed the presumptive sentence—life in prison with the possibility of parole after serving 25 years, followed by lifetime parole.

In this appeal, Jackson contends that the district court erred in three ways:

- Denying his motion to dismiss because he was denied his statutory right to a speedy trial;

- denying his motion to withdraw his jury trial waiver; and

- sentencing him by considering aggravating factors along with mitigating factors after denying his motion to depart to a grid sentence.

We will take up those issues in that order.

*The long delay is not grounds for reversing his conviction.*

In Jackson's first argument, he contends that the State has denied him his statutory right to a speedy trial. We must, however, clarify one point. Even though there are two avenues for a criminal defendant to assert a speedy trial claim—statutory or constitutional—when a defendant only asserts one type of speedy trial claim that defendant abandons the other type of claim by not arguing or briefing the issue. *State v. Dupree*, 304 Kan. 43, 48, 371 P.3d 862 (2016). Here, Jackson only raises a statutory speedy trial violation.

We do discuss the constitutional speedy trial test under *Barker v. Wingo*, 407 U.S. 514, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), but only because either a constitutional violation or prosecutorial misconduct is required to be shown to obtain relief under K.S.A. 2017 Supp. 22-3402(g). *State v. Brownlee*, 302 Kan. 491, 510-11, 354 P.3d 525 (2015). In our view, this argument is collateral to the issue that Jackson raises on appeal and, in fact, he asks us to not apply this precedent.

A quick review of the law is helpful here. Jackson's statutory speedy trial argument presents a question of law, which is subject to unlimited review. *State v. Vaughn*, 288 Kan. 140, 143, 200 P.3d 446 (2009). Under K.S.A. 2014 Supp. 22-3402(a):

3

"If any person charged with a crime and held in jail solely by reason thereof shall not be brought to trial within 150 days after such person's arraignment on the charge, such person shall be entitled to be discharged from further liability to be tried for the crime charged, unless the delay shall happen as a result of the application or fault of the defendant or a continuance shall be ordered by the court under subsection (e)."

Jackson waived formal arraignment on February 3, 2015, and was brought to trial on September 27, 2016. That means there were 602 days between the arraignment and trial. The State bears the burden of ensuring a defendant is given a speedy trial in compliance with K.S.A. 2017 Supp. 22-3402. We see nothing in the statute that requires the defendant to take any action to enforce the right but delays that "happen as a result of the application or fault of the defendant" are not counted in the period for a speedy trial. See K.S.A. 2017 Supp. 22-3402(a).

In other words, the defense requesting a continuance stays the statutory speedy trial calculation. *Vaughn*, 288 Kan. at 151. Generally, the actions of a defendant's counsel are attributable to the defendant. *State v. Bloom*, 273 Kan. 291, 310, 44 P.3d 305 (2002). One exception to this general rule is that an attorney, for the purposes of speedy trial rights, may not obtain a continuance over the objection of the defendant. See *State v. Hines*, 269 Kan. 698, 703-04, 7 P.3d 1237 (2000).

*We apply those rules to the facts here.*

The court set the original trial date in this case for March 9, 2015, but Jackson's first attorney, Gary Owens, requested nine continuances between March 9, 2015, and May 16, 2016. On May 16, 2016, Jackson waived his right to a jury trial and the case was set for a bench trial on June 9, 2016. Owens requested another continuance without a hearing, which was granted—and the trial was set for July 14, 2016. Additionally, Jackson requested three one-week continuances—delaying the trial until August 4, 2016. He was present in the courtroom and did not object to these three continuances. On

4

August 2, 2016, Jackson filed a pro se motion to remove Owens as counsel, which further delayed the trial. A continuance was granted for Jackson's new counsel to have time to prepare, and that time was assessed to Jackson.

If we exclude all of the dates for continuances that either Jackson or his attorney requested, the only statutory speedy trial calculation is from arraignment to the first trial date—February 3, 2015, to March 9, 2015 (34 Days)—and from his waiver of the right to a jury trial until his first bench trial date—May 16, 2016 to June 9, 2016 (24 days). Under this calculation, Jackson was only held in custody awaiting trial for 58 days, well within the statutory speedy trial rights period.

For his part, Jackson claims this calculation is erroneous because the time charged to him when he was not afforded an opportunity to object to a continuance cannot be counted against him. Three cases, *Brownlee*, *Dupree*, and *State v. Wright*, 305 Kan. 1176, 390 P.3d 899 (2017) (*Wright I*), illustrate Jackson's argument.

First, in *Brownlee*, a defendant challenged whether time could be counted against him for the purpose of the statutory right to a speedy trial when he did not acquiesce to the continuances his attorney obtained. The State conceded that the defendant had a right to be present at a hearing concerning the continuance to voice an objection to a continuance. Brownlee did not acquiesce to the continuance in part because he was not present, but *also* because:

> "[The defendant] emphasizes that he had filed a pro se motion to protect his right to a speedy trial . . . ; that he had advised defense counsel and the district court that the prospects of securing retained counsel were uncertain; and that he had instructed counsel to schedule the trial at the September 28 hearing." *Brownlee*, 302 Kan. at 506-08.

Under *Brownlee*, the mere lack of the defendant's presence alone was not all that determined the time could not be counted against him; rather, as Brownlee had shown, and the State conceded, he had not acquiesced in a continuance. *Brownlee*, 302 Kan. at 506-08.

In a similar case, our Supreme Court recognized its holding in *Brownlee* stating: "[W]e recently confirmed a defendant must have an opportunity to be present to express disagreement with a continuance because a defendant's disagreement matters in the statutory speedy trial analysis." *Dupree*, 304 Kan. at 49-50. This language from *Dupree* shows that failing to afford a defendant the opportunity to object is erroneous, regardless of additional evidence of acquiescence. The court in *Dupree* did not provide much analysis on the acquiescence issue because the defendant's claim did not survive the requirement of K.S.A. 2014 Supp. 22-3402(g) of a constitutional violation or prosecutorial misconduct. 304 Kan. at 50, 57.

Moving to the third case, we note that the jurisprudence advanced on this question. In *Wright I*, both a constitutional and statutory right to a speedy trial were challenged. The defendant and the defendant's attorney disagreed about the propriety of a continuance. Based on the holding in *Brownlee*, the court stated, "[I]f a personal objection from the defendant is going to be more than a hollow gesture, it needs to be heard and adjudicated in the district court." Thus, the failure to have the defendant present at the hearing on the continuance led the court to "have no hesitance in ruling that his right to be present at all critical stages of his trial was violated." 305 Kan. at 1178.

The court in *Wright I* did not determine whether this error was reversible; rather, it remanded the case to the lower court for fact findings. 305 Kan. at 1178-80. Recently, the court determined the error of *Wright I* proved to be harmless because had the defendant been afforded the opportunity to object the district court and State would have held the

6

trial within the speedy trial time. *State v. Wright*, 305 Kan. 449, 410 P.3d 893 (2018) (*Wright II*).

Here, Jackson expressly argues that his statutory right to a speedy trial has been violated. Based on Jackson's position, *Wright I* is not directly applicable because it was decided on the constitutional issue. Further, the facts of this case are distinguishable from the facts in *Brownlee*, *Dupree*, and *Wright I*, because of the testimony from the hearing on the motion to dismiss. In all three of these cases, there was no evidence available to support a conclusion that the defendant acquiesced to a delay.

Another case is helpful at this point. In *Vaughn*, the Court held there must be more than acceptance:

> "For acquiescence to result in a waiver of speedy trial rights, the State must demonstrate more than mere passive acceptance and must produce some evidence of agreement to the delay by the defendant or defense counsel. The record must support a conclusion that the defendant expressly or impliedly agreed to the delay." 288 Kan. at 145.

In contrast to those three cases, in this case, we have some evidence of acquiescence. Owens testified that Jackson personally agreed to continue the case. However, Jackson testified that he only agreed to a single continuance. While Owens stated that Jackson agreed to all of the continuances, the agreement was clarified that Jackson gave consent to continue the case as long as needed and never revoked that consent. Based on this testimony, we cannot conclude that Jackson actually acquiesced to every continuance. Thus, due to the holding in *Brownlee*, the State's failure to show that Jackson actually acquiesced to each continuance in conjunction with the lack of Jackson's presence at any hearing on the continuances leads to a conclusion that the district court's time calculation is erroneous.

7

Under the correct calculation, only the continuances that Jackson actually agreed to and the continuances that were charged to him over his objection may be counted as time against him. This means that of the total 602 days from March 9, 2015 to May 16, 2015 (68 days) and July 14, 2016 to September 27, 2016 (75 days) may be charged against Jackson. Therefore, Jackson was brought to trial 459 days after his waiver of his preliminary hearing. Jackson was tried outside of the statutory 150-day window in which the State had to bring him to trial. See K.S.A. 2014 Supp. 22-3402(a).

But that time calculation does not end our analysis. Jackson's conviction is not reversible solely due to the fact that he was not brought to trial within 150 days. We must look for evidence of either two additional elements: a violation of Jackson's constitutional right to a speedy trial; or evidence of prosecutorial misconduct that caused the delay. Under the express terms of K.S.A. 2014 Supp. 22-3402(g):

> "If a delay is initially attributed to the defendant, but is subsequently charged to the state for any reason, such delay shall not be considered against the state under subsections (a), (b) or (c) and shall not be used as a ground for dismissing a case or for reversing a conviction unless not considering such delay would result in a violation of the constitutional right to a speedy trial or there is prosecutorial misconduct related to such delay."

This is a limiting statute. While the Legislature has set a statutory speedy-trial goal that a defendant must be brought to trial within 150 days of that defendant's arraignment, with this enactment, it limits the courts' power to dismiss a prosecution or reverse a conviction on speedy trial grounds. In other words, if a defendant is not brought to trial within 150 days of arraignment, and if there is delay that was initially attributed to the defendant that was subsequently charged to the State, then such delay cannot be used for dismissing a case or reversing a conviction *unless* not considering such delay results in a violation of the defendant's constitutional right to a speedy trial, or there is prosecutorial misconduct related to such delay.

In *Brownlee*, the Supreme Court held this statute is applicable to "any factual situation in which a delay initially charged to the defense is subsequently charged to the State." 302 Kan. at 510-11. Jackson urges us to adopt the dissenting opinion's position from *Brownlee*. Under the dissenting opinion, the above sentence would only apply when a defendant has actually requested or agreed to the delay, and not all situations in which the delay was initially charged to the defense. 302 Kan. at 528 (Luckert, J., dissenting).

We are duty bound to follow the decisions of the Kansas Supreme Court unless there is an indication that the court intends to alter its position. *Williams v. C-U-Out Bail Bonds, LLC*, 54 Kan. App. 2d 600, 605, 402 P.3d 558 (2017). Jackson has not shown us that the court is altering its position from *Brownlee*. In *Dupree*, the Supreme Court rejected a defendant's request to apply the dissent from *Brownlee*. 304 Kan. at 50-51. Further, the holding in *Wright I* on the right to be present at a critical stage in trial was based in large part on the holding in *Brownlee* concerning reversibility under K.S.A. 2012 Supp. 22-3402(g). *Wright I*, 305 Kan. at 1178.

Because there has been no showing that the Supreme Court is departing from its decision in *Brownlee,* we must follow that decision. Accordingly, because the time from the continuances that Owens requested was initially charged to Jackson, but is subsequently being charged to the State, Jackson must show that either his constitutional speedy trial rights have been violated or prosecutorial misconduct caused the delay.

Because Jackson does not argue that there is any prosecutorial misconduct in this case and he does not brief this issue, we hold that he has abandoned that argument. This means that Jackson must prove that a constitutional speedy trial violation occurred to obtain a reversal of his conviction.

When considering a constitutional speedy trial violation, the United States Supreme Court has directed that we must use a balancing test that weighs the defendant's

and State's conduct. The Court has set out four factors that the courts should consider in making this determination. *Barker*, 407 U.S. at 530-33.

First, the delay must be presumptively prejudicial. This factor operates as a gatekeeper to prevent needless analysis on clearly constitutional trials. See 407 U.S. at 530-31. Jackson's trial was delayed 602 days. We hold that a delay of this magnitude is sufficient to warrant further consideration of the remaining factors.

The three remaining factors that we must examine are:

- The State's reasoning about the delay;
- the defendant's assertion of the right to a speedy trial; and
- whether there is prejudice from the delay.

These factors are then weighed against each other, and no single factor is dispositive. 407 U.S. at 533.

Our review of the record reveals that the major reason for the delay must be attributed to Jackson wanting to obtain a second DNA test and to test the veracity of the conclusions of the DNA tests. Because this was a goal of the defense, any delay in the trial caused in pursuit of that goal was not directly caused by the State.

Further, regarding Jackson's assertion of the speedy trial right, he did not assert the right until well after the period for a statutory speedy trial had run. At the earliest, Jackson asserted the right in his motion for a new attorney when he stated Owens was not asserting certain statutory rights. At the very least, Jackson asserted the right in his motion to dismiss. While the statutory right has no requirement that a defendant assert the right, Jackson's not asserting the right until July 29, 2016, at the earliest, supports a conclusion that Jackson was causing the delay. The manner that Jackson asserted the right in conjunction with his attorney's testimony that the delay was due to Jackson's high

10

motivation for additional DNA testing is an indication that no constitutional speedy trial violation had occurred.

The third factor we must assess is whether prejudice resulted from the delay. The United States Supreme Court recognized prejudice from a lengthy delay in trial affects three interests of a criminal defendant:

- Preventing oppressive incarceration;
- minimizing the accused's anxiety; and
- limiting the possibility that the defendant's ability to defend himself or herself against the charges would be harmed.

We note that in its prejudice analysis, the *Barker* Court focused on the third interest. A defendant's defense could be harmed by a degradation of witness memory or a loss in availability of witnesses. 407 U.S. at 532-33. Here, Jackson was tried on stipulated facts, so the third type of prejudice is not applicable—no witnesses' recollection of the events had degraded here because Jackson and the State agreed to the facts.

Additionally, a review of the facts of this case shows that there was no prejudice. Jackson was accused of raping a 14-year-old girl. As a result of the rape, Jackson impregnated her. Two separate DNA tests showed that Jackson was the father of the baby. This conclusion was confirmed by an independent laboratory. The fact that Jackson was the father of the child overwhelmingly supports a conclusion that he must have had sexual intercourse with the young underage girl at least one time and, thus, was guilty of rape. The delay in going to trial does not change these underlying, uncontroverted facts. Based on the overwhelming nature of the evidence, Jackson did not suffer any prejudice due to the delay in going to trial.

Weighing the three factors of the constitutional speedy trial test in *Barker* shows that Jackson is not entitled to relief. The reason for the delay is attributable to him

11

because he caused the delay by seeking additional DNA evidence. While Jackson asserted the right, he did so after personally accepting multiple continuances, which reinforces the conclusion that the delay is attributable to his actions. Finally, due to the case being tried on stipulated facts and the evidence overwhelmingly supporting a conviction, Jackson did not experience any prejudice. Because Jackson is not able to show a constitutional speedy trial violation, he is not entitled to relief under the Kansas speedy trial statutes by operation of K.S.A. 2014 Supp. 22-3402(g).

*Jackson makes a different argument to us about waiving his jury trial.*

This issue needs some clarification. Jackson contends the district court erred in denying his motion to withdraw his waiver of his jury trial, but he is making a new argument to us. Indeed, Jackson did ask the district court to withdraw his jury waiver, contending his waiver was not voluntary because he was erroneously informed that a waiver of his right to a jury trial was required to obtain a plea bargain. To us, Jackson now argues that his waiver was not voluntary because *he was not fully informed of all the rights that attach to a jury trial,* such as the right to have the jury unanimously decide whether he is guilty.

Generally, an issue that is not raised before a lower court cannot be raised for the first time on appeal. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). Exceptions to the general rule can be invoked to allow this court to determine issues for the first time on appeal. *State v. Beltz*, 305 Kan. 773, 776, 388 P.3d 93 (2017). Under Supreme Court Rule 6.02(a)(5) (2018 Kan. S. Ct. R. 34), the appellant must present arguments to the court why it should accept one of the exceptions. See *State v. Daniel*, 307 Kan. 428, 410 P.3d 877 (2018).

Jackson has done so. In his reply brief, he argues that two exceptions apply—the issue is a question of law based on proved or admitted facts and consideration is

12

necessary to prevent the denial of a fundamental right. Additionally, our Supreme Court has recognized that an argument concerning the validity of a jury trial waiver may be raised for the first time on appeal to avoid the erroneous denial of a fundamental right. *State v. Frye*, 294 Kan. 364, 368-71, 277 P.3d 1091 (2012). The argument Jackson makes in his reply brief is sufficient for us to reach the merits of his argument.

Within this issue, Jackson actually raises two distinct questions. First, he argues that the waiver that was obtained was not knowingly and voluntarily given, because he was not fully informed of the right to a jury trial by the district court before he waived his right. Second, Jackson argues the district court abused its discretion in denying his motion even if the initial waiver was knowing and voluntary. We will look at both.

*Jackson's waiver was knowingly and voluntarily made.*

In reviewing a challenge to a jury trial waiver, the factual findings of the district court are reviewed for substantial competent evidence and the legal conclusion drawn from those facts is reviewed de novo. *Frye*, 294 Kan. at 371. When the facts surrounding a jury trial waiver are not in dispute, the court reviews the issue de novo, because only a question of law is presented. *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012). Here, the facts surrounding the waiver are not in dispute.

A defendant that has a right to a jury trial may waive that right with consent of the prosecution and the court. K.S.A. 22-3403. We are instructed to use the test set out in *State v. Irving*, 216 Kan. 588, 533 P.2d 1225 (1975), to determine the validity of a waiver of the right to a jury trial. In order for a waiver to be valid, the defendant must first be advised by the court of his or her right to a jury trial, and then he or she must personally waive the right in writing or in open court on the record. 216 Kan. at 590. A waiver cannot be presumed from a silent record. 216 Kan. at 589.

13

Going further along this line, the waiver of a right to a jury trial is valid if the right is voluntarily waived by a defendant that knew and understood what he or she was doing. *Beaman*, 295 Kan. at 858. In determining whether a waiver is voluntary, this court must analyze all of the facts and circumstances surrounding the waiver. *State v. Clemons*, 273 Kan. 328, 340, 45 P.3d 384 (2002). Satisfying the form and process of a jury waiver is not necessarily sufficient to determine that a waiver is voluntary; the factual circumstances concerning the waiver "give important context to the process." *Beaman*, 295 Kan. at 861. Courts must strictly construe waivers in favor of defendants being allowed to exercise their right to a jury trial. *State v. Rizo*, 304 Kan. 974, 980, 377 P.3d 419 (2016).

In our view, the second portion of the *Irving* requirement is satisfied. See 216 Kan. at 590. Jackson was in open court and personally answered the district court's question of whether he wanted to waive his right to a jury trial. On appeal, Jackson does not challenge whether he personally waived the right. Rather, he challenges whether he knowingly waived the right, because the district court did not inform him of all of the rights associated with a jury trial. Jackson argues that the failure of the district court to inform him of all of the rights which attach to a jury trial shows that he did not know and understand what he was doing when he waived his right to a jury trial.

There is no requirement in Kansas law that a defendant must be warned of every right that pertains to a jury trial before voluntarily waiving that right. *Beaman*, 295 Kan. at 862; see also *United States v. Ruiz*, 536 U.S. 622, 629-30, 122 S. Ct. 2450, 153 L. Ed. 2d 586 (2002) (holding a waiver may be valid when the defendant understands the right being waived and how that right applies generally even without knowledge of the specific consequences of invoking the right). In *Beaman*, our Supreme Court rejected an argument that a waiver was involuntary because the defendant was not advised of the 12-juror requirement. The court in *Beaman* relied on its holding in *State v. Clemons*, 273 Kan. 328, 45 P.3d 384 (2002), in which it rejected an argument that failing to advise a

14

defendant that the jury had to unanimously decide the case made a waiver involuntary. See 273 Kan. at 340-41. Based on the holding in *Clemons*, Jackson's argument is not persuasive to the extent that he argues the court erred by not informing him that the jury would have to reach a unanimous decision. Similarly, Jackson's argument fails in regards to the other auxiliary parts of a jury trial that were not explicitly explained by the district court.

Jackson does not cite any case that requires the district court to explain the nature of the right to a jury trial to the extent that he asks. We acknowledge that some panels of this court are split on exactly what must be told to a criminal defendant for a jury trial waiver to be knowing and voluntary. Some panels take an approach that informing the defendant that they have a right to a jury trial is sufficient; whereas, other panels have required a greater explanation of what the right to a jury trial entails.

For our purposes, the facts of this case are similar to *State v. Dorantes*, No. 111,224, 2015 WL 4366452 (Kan. App. 2015) (unpublished opinion). In *Dorantes*, the only statements on the record concerning the waiver of the right to a jury trial were the following:

> "'MR. CUROTTO: May it please the Court, Mr. Ochoa-Dorantes appears in person and by and through counsel David Curotto. Judge, can we have a trial set, please.
>
> "'THE COURT: Is this a jury case?
>
> "'MR. CUROTTO: Bench, judge.
>
> "'THE COURT: All right.
>
> . . . .
>
> "'THE COURT: Has there been a waiver of jury on this?

15

"'MR. CUROTTO: Not on that point, Judge.

"'THE COURT: Mr. Ochoa-Dorantes, you have a right to have your case heard and decided by a jury of your peers. If you waive that right, your case will be heard and decided by a District Court judge. If you waive your right to a jury trial on this case, you won't be able to ask for it later if you change your mind. It is a decision for the rest of the case.

"'Mr. Ochoa-Dorantes, do you want to waive your right to trial by jury?

"'THE DEFENDANT: Yes.

"'THE COURT: Thank you. I'll find that waiver as knowing and voluntary.'" 2015 WL 4366452, at *2.

The *Dorantes* panel determined this conversation was sufficient to advise the defendant of his right to a jury trial. 2015 WL 4366452, at *6-7. The panel rejected the defendant's arguments that the waiver was not voluntary because he was not informed of the "'essential components'" of the right to a jury trial—for instance, the 12-juror requirement, unanimity, and beyond a reasonable doubt standard. 2015 WL 4366452, at *6. In relying on the holding in *Beaman*, the *Dorantes* panel held the defendant's arguments on this point failed. 2015 WL 4366452, at *6; see *State v. Williams*, No. 107,505, 2013 WL 2321166, at *5 (Kan. App. 2013) (unpublished opinion).

On the other hand, Jackson argues that *State v. Cervantes-Cano*, No. 107,179, 2013 WL 1943060 (Kan. App. 2013) (unpublished opinion), is applicable. In *Cervantes-Cano*, a panel of this court determined a waiver was not voluntarily given when the defendant was not informed of his right to a jury trial; rather he was asked whether he wanted "'to waive [his] right to a trial by jury'" and "'try the case to the Court.'" 2013 WL 1943060, at *3. The panel determined the plea colloquy was insufficient because the district court did not engage in any discussion with the defendant about what the right to

16

a jury trial entailed. Further, the panel held that the terms "trial by jury" and "trial to the court" are not intuitive terms. They are terms of art with specific meanings that informed lay people might not fully understand. Compounding upon the problem was the fact that the defendant in *Cervantes-Cano* did not speak English. Based upon this, the panel determined reversal of the conviction and remand was appropriate. 2013 WL 1943060, at *3-4.

Another panel of this court analyzed the holding in *Cervantes-Cano* and determined that because the defendant did not have difficulties with English, *Cervantes-Cano* did not apply. *State v. Johnson*, No. 113,229, 2016 WL 758327, at *3 (Kan. App. 2016) (unpublished opinion), *rev. denied* 305 Kan. 1255 (2017). The panel in *Johnson* determined that all of the essential components of a jury trial waiver were present. The defendant in *Johnson* was informed that he had the right to a jury trial and asked:

- If it was his decision to waive the right to a jury trial;
- if he had spoken with his attorney about the matter;
- if he understood that he could not change his mind; and
- if he had been threatened or promised in conjunction with waiving the right.

This case is similar to *Cervantes-Cano* in that Jackson was not informed of every detail about the process of a jury trial. Additionally, Jackson had difficulty reading. Although he had difficulty reading, the record does not show that Jackson had any difficulty communicating in English, so this case is distinguishable from *Cervantes-Cano*.

These facts are more akin to *Dorantes* and *Johnson*. Before accepting Jackson's waiver, the district court engaged in the following plea colloquy:

17

"THE COURT: All right then, Mr. Jackson, within the last 48 hours [have you taken] any drugs, alcohol, [or] anything that would affect your ability to understand your rights in this matter or what we're doing here today, sir?

"THE DEFENDANT: No.

"THE COURT: Okay. And you've had a chance to fully discuss all this with Mr. Owens; is that correct?

"THE DEFENDANT: Yes.

"THE COURT: Okay. And tell me how old you are.

"THE DEFENDANT: Forty.

"THE COURT: And how far did you go in school?

"THE DEFENDANT: I graduated.

"THE COURT: Okay. All right, and do you understand if you waive your right to a jury trial you're giving up the right to have a jury of 12 decide whether you're guilty or not guilty of the original charges as set forth in the Complaint/Information? . . . You feel like you fully understand your right to a jury trial?

"THE DEFENDANT: Yes.

"THE COURT: And you've had a full opportunity to discuss that with Mr. Owens; is that correct?

"THE DEFENDANT: Yes.

"THE COURT: Understanding your right to a jury trial, is it your choice to waive your right to a jury trial in this case?

"THE DEFENDANT: Okay.

"THE COURT: Is that a yes?

"THE DEFENDANT: That's a yes.

"THE COURT: All right. I'll accept your waiver, I'll find you've knowingly, voluntarily waived your right to a jury trial."

This exchange shows us that Jackson was informed of and asked about all of the required components of a valid jury trial waiver, like *Johnson* and *Dorantes*. Jackson was informed that he had a right to a jury trial. Additionally, he had discussed the waiver with his attorney and indicated that he understood the right to a trial by jury and understood the choice to waive the right to a jury trial was his choice. Jackson personally waived that right on the record. The requirements for a waiver of the right to a jury trial are satisfied in this case. See *Irving*, 216 Kan. at 590. The district court did not advise Jackson of all the rights that attach to a jury trial, but there is no requirement in Kansas law to advise a defendant of these rights when obtaining a waiver. See *Beaman*, 295 Kan. at 862. Jackson's waiver of his right to a jury trial was valid, and the district court did not err by denying his motion.

*We see no abuse of discretion here.*

The second question we must answer is whether the district court erred in denying Jackson's motion even though the waiver was knowingly and voluntarily made. The decision to grant a motion to withdraw a plea that was knowingly and voluntarily made is within the discretion of the district court. See *State v. Fisher*, 257 Kan. 65, 71, 891 P.2d 1065 (1995). Accordingly, this court will not overturn that determination unless the district court abused its discretion. *State v. Lawrence*, 216 Kan. 27, 28, 530 P.2d 1232 (1975). A court abuses its discretion when it either makes an error of fact, makes an error

19

of law, or makes a decision that no reasonable person could agree with. *State v. Sean*, 306 Kan. 963, 983, 399 P.3d 168 (2017).

Jackson's only argument is that no reasonable person would have made the decision to deny his motion. We are unconvinced. In making its decision, the district court weighed Jackson's right to a jury trial with where the case was procedurally. When reviewing a motion to withdraw a jury trial waiver, the district court may consider the timeliness of the request and the inconvenience granting the request may cause. *State v. Pruett*, 213 Kan. 41, 47-48, 515 P.2d 1051 (1973). The district court may also consider its own docket when making the determination of whether to grant a motion to withdraw a jury trial waiver. *Lawrence*, 216 Kan. at 30.

Here, the district court looked at the timing of the motion in relation to its own schedule. All parties were prepared for trial the Monday following the motion hearing. The district court determined that granting the request would have caused inconvenience to all of the parties. Additionally, the district court noted that "[t]he docket is very busy next week." Further, at the time of the request Jackson had been awaiting trial for over one and a half years. Finally, in denying the motion, the district court heavily relied upon a panel of this court's decision to deny a similar motion in *State v. Robles*, No. 104,272, 2012 WL 687063, at *5 (Kan. App. 2012) (unpublished opinion). Based on all of the circumstances, a reasonable person could determine that it was prudent to deny Jackson's motion to withdraw his plea. Therefore, the district court did not abuse its discretion.

*We find no improper considerations at sentencing.*

Jackson's final issue on appeal is whether the district court erred in sentencing him under Jessica's Law. Jackson argues that the district court erred because it failed to consider the mitigating factors he presented prior to sentencing in violation of our Supreme Court's holding in *State v. Jolly*, 301 Kan. 313, 324, 342 P.3d 935 (2015).

20

When reviewing the denial of a motion to depart in a Jessica's Law case, we will not vacate the sentence unless the district court abused its discretion. See *State v. Randolph*, 297 Kan. 320, 336, 301 P.3d 300 (2013). Here, Jackson claims the court abused its discretion by making an error of law by not considering the mitigating factors. Some additional facts are necessary to understand this issue.

At sentencing, the State asked the court to impose the presumptive sentence. In the State's view, there were no mitigating circumstances that would warrant a departure sentence. Jackson, on the other hand, presented various mitigating circumstances including:

- He demonstrated remorse;
- the method of resolution was substantially similar to a plea;
- Jackson never required the victim to testify in court against him;
- he has a supportive family that would allow him to reintegrate into the community; and
- he voluntarily turned himself into the police.

After hearing the arguments of both parties, the district court considered the deterrent effect of the presumptive sentence:

"When we impose a sentence, we look at the nature of the crime. We look at the circumstances surrounding what was done before the arraignment and after the situation. We look at your character and your condition, and we look at the history of these things. I look at the type of term that is prescribed by statute. I have to consider the safety of the public out there, and that is paramount. I look at your needs and what is in your interest, and I look at what is appropriate in these types of cases.

"I will tell you, before I announce the sentence, that I'm not going to grant any kind of departure, and I wouldn't in this kind of case. The statutes have been enacted for many, many reasons, but, in particular, to make sure that people that have been a victim

21

of these types of things are protected and people will think twice in the future—not you, but anyone else will think twice in the future in the event the temptation is there for him."

We now turn to the law. Generally, the district court is required to sentence a person who is over 18 years old and convicted of rape of a person under 14 years old to life imprisonment with the possibility of parole after 25 years. See K.S.A. 2014 Supp. 21-6627(a)(1)(B); K.S.A. 2014 Supp. 21-5503(a)(3) (defining rape). For first-time offenders, however, the district court may depart to a grid sentence if the district court finds there are substantial and compelling reasons to do so. Specifically, the statute states that a departure is permissible when the district court "finds substantial and compelling reasons, following a review of mitigating circumstances, to impose a departure." K.S.A. 2014 Supp. 21-6627(d). Caselaw illuminates this point.

In *Jolly*, our Supreme Court set out a method for the application of K.S.A. 2014 Supp. 21-6627(d):

"[T]he proper statutory method when considering a departure from a Jessica's Law sentence is for the district court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances. Then, in considering the facts of the case, the court determines whether the mitigating circumstances rise to the level of substantial and compelling reasons to depart from the otherwise mandatory sentence. Finally, if substantial and compelling reasons are found for a departure to a sentence within the appropriate sentencing guidelines, the district court must state on the record those substantial and compelling reasons." 301 Kan. at 324.

Thus, under *Jolly*, it is error for the district court to weigh mitigating factors against aggravating factors in determining whether to allow a departure to a grid sentence. Although Jackson makes a claim that the district court erred by not following the procedure outlined by *Jolly*, he does not set out any aggravating factors that the district court impermissibly weighed against the mitigating factors. Further, Jackson's

22

claim that the district court did not mention weighing the mitigating factors—thus, violating *Jolly* by not conducting an independent review of the mitigating factors, is unfounded.

The district court's consideration of the mitigating factors presented by Jackson are shown through the words it used in denying the motion.

> "When we impose a sentence, we look at the nature of the crime. *We look at the circumstances surrounding what was done before the arraignment and after the situation. We look at your character and your condition, and we look at the history of these things*. I look at the type of term that is prescribed by statute. I have to consider the safety of the public out there, and that is paramount. *I look at your needs and what is in your interest*, and I look at what is appropriate in these types of cases." (Emphases added).

These words from Jackson's sentencing hearing show that the district court considered the mitigating factors presented by Jackson.

Jackson focuses on the words "when considering a departure from a Jessica's Law sentence is for the district court first to review the mitigating circumstances without any attempt to weigh them against any aggravating circumstances" in *Jolly*. See 301 Kan. at 324. He argues this phrase requires a wholly independent review of the mitigating circumstances. This is a misapplication of the case. A wholly independent review of the mitigating circumstances would be worthless because the substance of the analysis is whether the mitigating circumstances *in light of the facts of the case* provide substantial and compelling reasons to depart.

*Jolly* does not require a wholly independent review of the mitigating circumstances; rather, the case requires a review of the mitigating circumstances independent of any aggravating circumstances. The review of the mitigating circumstances is necessarily a review dependent upon the facts of the case. As the court

23

in *Jolly* stated "the facts of the case—including any egregious ones—are essential for a judge to consider in deciding if a departure is warranted based on substantial and compelling reasons. Simply stated, a judge does not sentence in a vacuum." 301 Kan. at 323-24.

The correct application of *Jolly* is demonstrated in *State v. Powell*, 53 Kan. App. 2d 758, 393 P.3d 174, *rev. granted* 306 Kan. 1328 (2017). In *Powell,* the State introduced testimony of Powell's stepdaughter concerning the severity of his abuse. This testimony was unrelated to the crime for which he was being sentenced. The stepdaughter's testimony was presented as an aggravating factor to respond to mitigating factors presented by Powell. The record was not clear whether the district court weighed this aggravating factor against the mitigating factors, so vacating the sentence and remanding was an appropriate remedy. 53 Kan. App. 2d at 761-62; see *State v. McCormick*, 305 Kan. 43, 50-51, 378 P.3d 543 (2016). *McCormick* held that remanding for resentencing is appropriate when the court cannot be wholly confident that the district court did not impermissibly weigh aggravating factors against mitigating factors in a Jessica's Law case.

Here, the district court weighed the mitigating circumstances that Jackson presented against the facts of the case. Unlike *Powell*, the State in this case did not present any aggravating factors for the district court to weigh against the mitigating factors. *Jolly* prevents the district courts from weighing the mitigating factors against aggravating factors in determining whether substantial and compelling reasons exist for a departure. The State did not present, and the district court did not consider, any aggravating factors. The district court did not abuse its discretion by making an error of law.

Affirmed.

24