NOT DESIGNATED FOR PUBLICATION

No. 125,711

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARK D. PRICKETT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Submitted without oral argument. Opinion filed May 8, 2026. Affirmed.

*Randall L. Hodgkinson*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, *Marc Bennett*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before PICKERING, P.J., SCHROEDER and HURST, JJ.

PICKERING, J.: Mark D. Prickett was convicted in a jury trial of seven counts of indecent liberties with a child. He appeals the district court's denial of his motion for a continuance, the district court's jury instructions defining intentionally, and whether the State sufficiently proved venue in Sedgwick County on counts 6 and 7. After review, we find no error by the district court and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, the State charged Prickett with seven counts of aggravated indecent liberties with a child. Two counts were for actions between 2007 and 2008 against D.P. at Prickett's home in Sedgwick County. Three counts were for actions between 2014 and 2016 against H.H. at Prickett's home in Sedgwick County. The last two counts were for actions at Cheney Lake in 2018:  one count committed against T.B. and the other against M.H.

Sometime between 2007 and 2008, when D.P. was four years old, Prickett engaged in touching D.P.'s genitals and had the child do the same to Prickett. From 2014 to 2016, when H.H. was 10-12 years old, Prickett touched H.H. over and under her clothes on her vagina and breasts at his home in Sedgwick County. In 2018, Prickett took seven-year-old T.B. and eight-year-old M.H. to Cheney Lake. At Cheney Lake, all three skinny dipped. Prickett touched T.B.'s butt and penis, and Prickett touched M.H.'s butt, breasts, and vagina.

The district court appointed trial counsel after the prior counsel withdrew on October 5, 2020. The jury trial with new counsel was originally scheduled to begin in February 2022, but, due to defense counsel's health problems and illness from COVID-19, the district court granted a continuance until August 2022. At the January 2022 status conference, defense counsel noted that in July 2022 he had a trial, but he could be prepared in August for Prickett's trial.

On the day the jury trial was set to begin, Prickett moved to continue the trial for more time to prepare, with the understanding that scheduling could mean another six months until trial began. At the hearing on his motion to continue the trial date, trial counsel asked for the continuance for three reasons:  (1) Trial counsel and Prickett needed more time to review and discuss the evidence and prepare for the trial; (2) trial

counsel had just received the transcript for the hearing on the State's request to admit evidence under K.S.A. 60-455; and (3) trial counsel needed additional time to coordinate with a possible witness about testifying. Defense counsel advised: "I had another week-long jury trial about a month ago, and I just, unfortunately, haven't had the time, really, to get over and—and talk with [Prickett] as much about the case as I would have liked to and he would have liked to." Defense counsel also stated that he only acquired the transcript of the pretrial motion hearing that morning.

The State was ready to proceed and had arranged a witness to fly in from Florida. The State noted that it could be of some expense to rearrange the flight but also that the airplane ticket could possibly be used for a later date. The State did not object to the motion but was prepared to go to trial. Defense counsel explained "he's facing seven counts of aggravated indecent liberties, potentially seven 25-to-life sentences. And I understand it's been a long time coming, but we really need to be prepared for this case, and I regret that I'm here telling you that I'm not."

When reviewing the timeline of Prickett's case, the district court stated:

"When I look at the history of this case, it is an 18 CR case. The first jury trial control setting was in May, May 10th, 2019. And I understand counsel has not been the counsel throughout this whole process. That being said, the first firm trial setting was October 21st, 2019, and there was motions heard and ultimately continued from February 14th, 2022 to the current date. So six months ago, in order for us to be prepared and ready to go on this trial."

The district court denied Prickett's motion for a continuance. The district court did give Prickett the option to begin the trial that day or Prickett and defense counsel could review the case and jury selection could begin the next day. Prickett decided to take the day to prepare and proceed with jury selection the next day.

On counts 6 and 7, both T.B. and M.H. testified that the actions occurred at Cheney Lake. Detective Latavia Allen testified about where the actions occurred. The State showed Allen a map and asked Allen how many counties "are involved over Cheney Lake." Allen responded, "Three . . . . There's Sedgwick County, Kingman County, and Reno County." Allen acknowledged that, when a crime occurs on a body of water that borders multiple counties, the law provided jurisdiction to officers of those counties.

In closing, the State described the element of intent:

"So he has to intend that this is a sexual matter. He's going to either try to arouse himself, the children, or both. That intent has to be there. I'm touching them because I'm getting sexually aroused. I want these kids to be sexually aroused, or maybe both of us sexually aroused.

. . . .

"The issue of intent. I want you to think about a couple of things the evidence shows to you. And this is what the law says, it has to be his conscious objective to do the act complained about by the State. He's got to mean, I have to intend to be sexually aroused. I'm doing this for his own pleasure; right? That's his intent."

The State's culpable mental state jury instruction stated: "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State." Prickett did not define "intentionally" in his proposed jury instructions. Prickett also did not object to the jury instructions defining the elements of the crime. He only asked for the instructions to be modified based on the location. The final jury instructions included the State's definition of intentionally.

A jury convicted Prickett on all seven counts of aggravated indecent liberties with a child. Before sentencing, Prickett moved for a new trial, listing (1) the district court's denial of his continuance motion; (2) the erroneous admission of K.S.A. 60-455 evidence

4

of alleged prior bad acts; (3) insufficient evidence supporting Prickett's seven convictions; and (4) the "interests of justice" demanded a new trial. The district court denied the motion and sentenced Prickett to seven consecutive life sentences without the possibility of parole for 25 years.

Prickett appeals.

ANALYSIS

I.      *The District Court Did Not Abuse Its Discretion When It Denied Prickett's Motion for a Continuance*

*Preservation*

Prickett argues that the first issue is preserved, stating:

> "Just prior to the start of trial, defense counsel moved for a continuance. The district court denied the motion. Defense counsel also raised the issue of the district court's failure to allow a continuance in Mr. Prickett's motion for new trial. The district court denied the motion for new trial just before sentencing. Therefore, this issue is preserved for appeal."

We agree with Prickett in part. As the record indicates, Prickett moved to continue his trial. He did not, however, raise a constitutional challenge under the Sixth Amendment to the United States Constitution to the district court's denial of his motion to continue the trial date. At the district court level, he did not assert that the district court's ruling denied him his constitutional right to prepare a defense and ask the district court to apply the *Anthony* factors. See *State v. Anthony*, 257 Kan. 1003, 1019, 898 P.2d 1109 (1995).

5

On appeal, Prickett expands his argument by including a constitutional challenge within his argument that the district court erred in denying the motion to continue. He asserts that his "conviction is obtained in violation of the constitutional right to present a defense" and asks us to apply the *Anthony* factors. Here, Prickett essentially has merged two issues together: (1) whether the district court abused its discretion in denying Prickett's trial continuance motion; and (2) whether the district court's denial of his trial continuance violated his constitutional right to present a defense. Our Kansas Supreme Court has previously addressed these two issues *separately* in *State v. Flack*, 318 Kan. 79, 95-96, 541 P.3d 717 (2024).

In *Flack*, a capital murder case, the district court granted a continuance after original counsel withdrew but denied further requests to continue. On appeal, Flack challenged the rulings by the district court, asserting the court's "scheduling orders violated his Sixth Amendment due process right to present a defense, his corresponding rights under sections 5 and 10 of the Kansas Constitution Bill of Rights, and finally his statutory rights under K.S.A. 22-3406 (reasonable time to prepare for trial) and K.S.A. 22-3401 (continuances for good cause)." *Flack*, 318 Kan. at 95.

The *Flack* court recognized that Flack had raised two different issues, each involving a different standard of review (abuse of discretion and unlimited review) and different analysis, e.g., the latter issue applied the *Anthony* factors. The *Flack* court explained: "From this, *we discern two lines for analysis*. First, he statutorily argues the district court abused its discretion by denying persistent continuance requests. Second, he constitutionally asserts a due process denial under the federal and state Constitutions." (Emphasis added.) 318 Kan. at 95-96.

The *Flack* court did reach both issues and found no error. But the lack of preservation was not at issue in that case, particularly since the Supreme Court will consider unpreserved issues in death penalty cases. See K.S.A. 21-6619(b). And as this

6

case is not a death penalty case, an exception under Supreme Court Rule 6.02(a)(5) (2026 Kan. S. Ct. R. at 36) is required.

Prickett does not cite an exception in briefing. We are unable to consider Prickett's expanded constitutional argument embedded in the issue that the denial of his continuance motion violated his constitutional right to present a defense and apply the *Anthony* factors. Without the appellant's compliance to Rule 6.02(a)(5), it would be an abuse of discretion for us to reach the constitutional challenge for the first time on appeal. See *Schutt v. Foster*, 320 Kan. 852, 860, 572 P.3d 770 (2025). Consequently, our review is limited to whether the district court abused its discretion in denying Prickett's continuance motion.

*Standard of review*

A district court's ruling on a motion for continuance is reviewed for abuse of discretion. *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019). A judicial action constitutes an abuse of discretion if it "(1) is arbitrary, fanciful, or unreasonable; (2) is based on an error of law; or (3) is based on an error of fact." *State v. Younger*, 320 Kan. 98, 137-38, 564 P.3d 744 (2025).

*Discussion*

Prickett argues the district court abused its discretion when it denied his continuance motion. He does not claim that the district court committed an error of law or fact. Prickett argues that defense counsel did not have enough time to prepare for the trial, including reviewing a recently received pretrial transcript.

The State replies that Prickett did not cite "a single case in which an appellate court has ruled the district court abused its discretion in denying a continuance request."

The State also argues that the district court did not abuse its discretion because the case had been pending for four years, the district court had granted Prickett multiple continuances, and defense counsel had been representing Prickett for nearly two years.

K.S.A. 22-3406 entitles a defendant "to a reasonable time to prepare for trial". Under K.S.A. 22-3401, a district court may grant a continuance "for good cause shown." "Mere speculation that with more time something favorable may happen for the defendant does not constitute good cause." *State v. Beaman*, 295 Kan. 853, 864, 286 P.3d 876 (2012).

Prickett argues that *Flack* supports his argument that "every defendant has a broad constitutional right to present a defense." We agree. However, he also requests that we apply the *Anthony* factors. But those factors are not applied when considering whether a district court abused its discretion in denying a continuance motion. See *Flack*, 318 Kan. at 102 (only applying *Anthony* factors when considering whether district court's denial of Flack's trial continuance violated his constitutional right to present a defense—not whether district court abused its discretion in denying continuance motion). Therefore, the *Anthony* factors are not applicable in our analysis.

In *Flack*, our Supreme Court held that the district court did not abuse its discretion when it denied a continuance in a death penalty case after one counsel of a three-member team withdrew. 318 Kan. at 100. The court found that the district court reasonably handled the case when it allowed defense counsel a continuance of several months after original counsel withdrew, new counsel did not start from scratch, and outstanding tasks were dealt with as the trial approached. 318 Kan. at 100.

Likewise, here, the district court did not abuse its discretion when it denied Prickett's request for a continuance. According to Prickett, the additional time would allow him to continue reviewing the evidence, review a recently received 61-page

8

transcript of a pretrial hearing regarding the State's motion to admit K.S.A. 60-455 evidence, and coordinate with a possible witness. After hearing Prickett's arguments for granting his continuance motion, the district court noted how long the case had been pending. The first firm trial date was set in October 2019, and trial counsel was appointed in October 2020 after prior counsel withdrew. At the time of the August motion hearing on Prickett's motion to continue, defense counsel had been representing Prickett for 22 months. Such a length of time would be sufficient to review the State's evidence with Prickett and prepare a defense for the August 2022 trial.

Further, this was not Prickett's first motion for continuance. Six months earlier, in January 2022, the district court had granted trial counsel's motion to continue the February 2022 trial date. The primary reason for Prickett's motion to continue was an exposure to COVID-19. Additionally, when the district court set the new date for August 15, 2022, trial counsel stated on the record that he had another trial scheduled the month before Prickett's trial. Therefore, trial counsel was fully aware of his trial commitments leading up to the August 2022 trial date.

Additionally, the State advised the district court that it was ready for trial. The State also had incurred expenses to have a witness fly in from Florida that day, and the State was unsure whether it could use the ticket later. Prickett argued that this issue could have been resolved using Zoom, but the State had already incurred the travel arrangements expense and had the witness present in Kansas to testify.

Prickett also argues that, due to the court's ruling, trial counsel "failed to make basic and appropriate objections to protect Mr. Prickett's right to fair trial and his right to an effective appeal."

To review, in a pretrial motion, the State moved to admit allegations of Prickett's prior bad acts to prove a propensity to engage in sexual acts with children of a certain

9

age. Prickett's original counsel argued to exclude the K.S.A. 60-455(d) evidence, but the district court granted the State's motion. The trial court admitted the evidence "to show that Mr. Prickett has a propensity to engage in sexual misconduct with children between the age of four and 12[,]" finding that the "prior bad acts . . . are material and valuable, and the probative value outweighs the potential prejudice."

On the evening before trial, trial counsel received the 61-page transcript of the K.S.A. 60-455 motions hearing. In his continuance motion, he argued that he needed additional time to review the transcript. At trial, the State admitted propensity evidence under K.S.A. 60-455(d) that involved allegations of uncharged sexual misconduct, but trial counsel failed to object to the propensity evidence.

On appeal, Prickett argues that trial counsel's failure to object and to make a continuing objection at trial was due to the denial of the continuance. But this assertion is unsupported by the record. In the motion for new trial, trial counsel argued the admission of the K.S.A. 60-455 evidence was highly prejudicial but never argued that his recent receipt of the transcript resulted in his failure to make a contemporaneous objection to the K.S.A. 60-455 propensity evidence. Additionally, at the January 2022 status conference where the district court granted the continuance from February to August, trial counsel stated, "But I do know there have been some fairly substantial pretrial motions already filed. I was not aware that there had been a hearing on those, but I think we can get that in order one way or another fairly quickly." Further, although Prickett's motion was denied, the district court did provide trial counsel with an extra day to prepare for the trial, which would be sufficient to timely review the 61-page transcript and its index before the trial began.

From this we can easily conclude that trial counsel was already aware of the rulings and could have prepared for the August trial. With this knowledge of the district

10

court's pretrial ruling regarding the K.S.A. 60-455 evidence, trial counsel could have objected to the K.S.A. 60-455 evidence at trial.

To conclude, Prickett did not show good cause for a continuance. As the court noted, this case had been pending for over three years. In light of trial counsel's appointment 22 months prior to the August 2022 jury trial, the district court's previous grant of a six-month trial date continuance, and the court's allowance of another day for trial counsel to review the pretrial transcript, the district court did not abuse its discretion.

II.    *The District Court Did Not Err When It Defined "Intentionally"*

Prickett asserts that the jury instruction of aggravated indecent liberties with a child was legally erroneous because the definition of intentional conduct was legally inappropriate. He argues that the district court erroneously instructed the jury that he had to intend to act even though the crime requires a specific intent to cause a result.

*Standard of review*

"When analyzing jury instructions, appellate courts follow a three-step process: (1) determine whether the appellate court can or should review the issue, in other words, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) consider the merits of the claim to determine whether error occurred below; and (3) assess whether the error requires reversal—in other words, whether the error can be deemed harmless.

". . . At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the record." *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

11

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3). "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given." *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

Because Prickett failed to object to the jury instruction before the district court, we review for clear error. See K.S.A. 22-3414(3). Prickett bears the burden of showing that the jury instruction was both erroneous and prejudicial. See *Mendez*, 319 Kan. at 727-28.

*Discussion*

The State charged Prickett in all seven counts of engaging in lewd fondling or touching "with the intent to arouse or satisfy the sexual desires of the child, the defendant, or both." The district court gave the State's culpable mental state instruction of: "A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State."

Prickett argues that the jury instruction that Prickett had to intend the act rather than cause the result was legally inappropriate because the crime is defined in terms of intent to cause a certain result—arousal or satisfaction of sexual desires.

The State argues that the jury instruction could not have misled the jury because a finding that Prickett intended the acts of fondling or touching necessarily implies a finding that he also intended to arouse his and/or the victims' sexual desires.

12

*The provided offense jury instructions were legally and factually appropriate.*

Prickett does not argue the instructions were factually inappropriate. And we would agree that the offense instructions were factually appropriate. Instead, Prickett argues that the "intentionally" instruction was not legally appropriate because it did not properly define the culpable mental state as to "cause the result . . . to arouse or satisfy the sexual desires of the child, the defendant, or both."

The State argues that the instructions were legally appropriate because the instructions required the State to prove that the "defendant intended to arouse or satisfy the sexual desires of the victim, himself, or both."

A jury instruction is legally appropriate if the instruction "'fairly and accurately state[s] the applicable law.'" *State v. Kleypas*, 305 Kan. 224, 302, 382 P.3d 373 (2016). A jury instruction is factually appropriate if the particular facts of the case support the instruction. 305 Kan. at 302. Here, the instructions were not clearly erroneous as they accurately and directly matched the statutory language for aggravated indecent liberties with a child. See K.S.A. 21-5506(b)(3); *State v. Crosby*, 312 Kan. 630, 641, 479 P.3d 167 (2021).

Under K.S.A. 21-5202(h):

> "A person acts 'intentionally,' or 'with intent,' with respect to the nature of such person's conduct or to a result of such person's conduct when it is such person's conscious objective or desire to engage in the conduct or cause the result. All crimes defined in this code in which the mental culpability requirement is expressed as 'intentionally' or 'with intent' are specific intent crimes. A crime may provide that any other culpability requirement is a specific intent."

13

PIK Crim. 4th 52.010 (2021 Supp.) provides two possible versions of intentionally:

"A defendant acts (intentionally) (with intent) when it is the defendant's conscious objective or desire to . . .

- do the act complained about by the State.

    or

- cause the result complained about by the State."

Here, the district court gave the offense jury instruction on all seven counts of indecent liberties with a child with the same definition of when a defendant acts intentionally. For example, Instruction No. 11 states:

"To establish this charge, each of the following claims must be proved:

"1. The defendant engaged in lewd fondling or touching of [the victim];

"2. The defendant intended to arouse or satisfy the sexual desires of [the victim], the defendant, or both [the victim], and the defendant.

"3. At the time of the act, [the victim] was less than 14 years old. The State need not prove the defendant knew the child's age.

"4. The defendant was 18 or more years old at the time the act occurred.

"5. This act occurred on or between the 1st day of January, 2014 and the 1st day of June, 2018, in Sedgwick County, Kansas.

"'Lewd fondling or touching' means fondling or touching in a manner which tends to undermine the morals of the victim and is so clearly offensive as to outrage the moral senses of a reasonable person. Lewd fondling or touching does not require contact with the sex organ of one or the other.

"*A defendant acts intentionally when it is the defendant's desire or conscious objective to do the act complained about by the State.*" (Emphasis added.)

14

An identical jury instruction challenge was previously addressed in *State v. Seba*, 305 Kan. 185, 380 P.3d 209 (2016). There, in a first-degree murder trial, the district court also provided the intentional offense jury instruction in accordance with PIK Crim. 4th 52.010 (2015 Supp.). Seba argued that because the instruction contained the language "'do the act' instead of 'cause the result,' the jury believed it could find Seba guilty merely by believing he intended to fire the gun." 305 Kan. at 207.

The *Seba* court disagreed and determined that the "'do the act' language accurately corresponded to the other language in the instruction" and "did not confuse the jury about the legal elements of first-degree premeditated murder . . . ." 305 Kan. at 207. Rejecting Seba's claim that the instruction was erroneous, the court ruled: "Taken as a whole, the instruction properly informed the jury of the intent requirement." 305 Kan. at 207. The Seba court found the instruction was legally appropriate.

Another panel of our court also found PIK Crim. 4th 52.010 (2021 Supp.) legally and factually appropriate for the crime of aggravated indecent liberties with a child. In *State v. Kellner*, No. 125,086, 2024 WL 208192, at *13 (Kan. App.) (unpublished opinion), *rev. denied* 318 Kan. 1088 (2024), the panel described an instruction similar to Prickett's where the jury was instructed of the definitions of "'lewd fondling or touching'" and "'intentionally.'" The panel found: "A natural reading of the instruction connects the act with the intent," with the act being lewd fondling or touching and the intent being the specific intent to be sexually aroused. 2024 WL 208192, at *14.

The same jury instructions adhering to PIK Crim. 4th 52.010 in this case are legally appropriate. The jury was instructed that Prickett must engage in the action of "lewd fondling or touching" with the intent to "arouse or satisfy the sexual desires" of a victim, Prickett, or both. In other words, "intended" modifies "to arouse or satisfy the sexual desires." The act complained about by the State causes a result—sexual arousal or

15

satisfaction—so either the "cause the result" language or the "act complained about" language properly instructs the jury.

Like *Seba*, where the killing instruction necessarily required death as a result, this instruction necessarily required that Prickett intended to do the act of lewd touching with sexual arousal as the result. The instructions taken as a whole did not confuse the jury and informed the jury of the intent requirement. "[T]he district court could have reworded the elements language to grammatically fit the 'cause the result' PIK language," but the jury instructions as given were both legally and factually appropriate. See *Seba*, 305 Kan. at 207. We follow the holding in *Seba* and find no legal error.

III.     *Venue in Sedgwick County Was Proper for the Crimes Committed at Cheney Lake*

*Standard of review*

"Venue and subject matter jurisdiction are distinct, and a court's subject matter jurisdiction is not dependent on venue considerations." *State v. Barnes*, 320 Kan. 147, 159, 563 P.3d 1255 (2025). Under K.S.A. 22-2602, "[e]xcept as otherwise provided by law, the prosecution shall be in the county where the crime was committed." The State "bears the burden of proving proper venue" in a criminal prosecution. *Barnes*, 320 Kan. at 159.

"Venue can be proven with circumstantial evidence." *State v. Euler*, 314 Kan. 391, Syl. ¶ 1, 499 P.3d 448 (2021).

"When a defendant challenges the sufficiency of the evidence, we review the evidence in a light most favorable to the State to determine whether a rational fact-finder could have found the defendant guilty beyond a reasonable doubt. We do not reweigh

16

evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses."
*Mendez*, 319 Kan. at 723.

*Discussion*

Prickett argues that K.S.A. 18-187, which defines the boundaries of Sedgwick County, does not establish Cheney Lake as within a boundary of Sedgwick County, so K.S.A. 22-2605 cannot be used to provide venue within Sedgwick County. Further, Prickett argues because Cheney Lake is not within Sedgwick County, the district court lacked jurisdiction and the convictions in counts 6 and 7 are void. But Prickett concedes that (1) K.S.A. 18-187 was enacted before Cheney Lake existed, and (2) "[it] might be correct to assert that Cheney Lake 'straddles' the boundary line between Sedgwick County and its neighboring county."

The State argues that venue was proper in Sedgwick County because Cheney Lake borders multiple counties and K.S.A. 22-2604 and K.S.A. 22-2605 make venue proper in any county where the crime is committed on or near a boundary of multiple counties.

If Prickett is correct that the statutory definitions of the boundaries of counties must be used to define boundaries, then Cheney Lake would have no county. K.S.A. 18-148 defines Kingman County's boundaries but does not describe Cheney Lake as constituting one of its boundaries. K.S.A. 18-178 defines the boundaries of Reno County but does not describe Cheney Lake as constituting one of its boundaries. But the link provided in Prickett's brief provides maps showing parts of Cheney Lake within the boundaries of each of these three counties.

Further, K.S.A. 22-2604 provides:  "Where a crime is committed on or so near the boundary of two or more counties that it cannot be readily determined in which county the crime was committed, the prosecution may be in any of such counties."

17

K.S.A. 22-2605 states:

"Where any part of a river, water course, body of water or reservoir constitutes the boundary line between two (2) or more counties, the venue is in any of such counties for prosecution of crimes committed over the whole extent of such part of the river, water course, body of water or reservoir, or any island therein."

The State admitted a map showing Cheney Lake spanning three counties—Sedgwick, Kingman, and Reno. And both victims testified that Prickett instructed them to remove their clothing and touched them in Cheney Lake.

Because Cheney Lake is a body of water that spans three counties, K.S.A. 22-2604 and K.S.A. 22-2605 apply to support venue in any one of the three counties. When viewed in the light most favorable to the State, sufficient evidence proved Prickett committed counts 6 and 7 in or near Sedgwick County. Thus, venue was proper in Sedgwick County.

Affirmed.

\* \* \*

HURST, J., concurring:  I join in the judgment as to Issues II and III and concur in the result as to Issue I, finding no error in the district court's denial of Prickett's trial day continuance request.

18